1
2
3

Leonard H. Stone Esq.
Nevada Bar No. 5791
SHOOK & STONE, CHTD.
710 South Fourth Street
Las Vegas, Nevada  89101
Tel:  (702) 385-2220

4
5
6

Adam J. Levitt (admitted *pro hac vice*)
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois  60602
Tel: (312) 214-0000

7
8

Attorneys for Plaintiff
(additional counsel appear on signature block)

**UNITED STATES DISTRICT COURT**

9

**DISTRICT OF NEVADA**

10
11

WILLIAM BRIDGE, individually and on
behalf of all others similarly situated,

12

Plaintiff,

Case No. 2:14-cv-01512-LDG-NJK

13

v.

**PLAINTIFF'S MEMORANDUM OF
POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S
MOTION FOR PROTECTIVE ORDER**

14
15
16

CREDIT ONE FINANCIAL, A Nevada
Corporation d/b/a CREDIT ONE BANK,
N.A.,

17

Defendant.

18
19
20
21
22
23
24
25

Dated: February 10, 2015

26
27
28

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................**Error! Bookmark not defined.**

I.   BACKGROUND ............................................................................................1

II.  ARGUMENT ................................................................................................3

   A.  Legal Standard ........................................................................................3

   B.  Each Noticed Topic Seeks Information Relevant to Class Certification and
       Defendant's Objections Are Meritless................................................................4

      1.  Topics 2-3: Defendant's dialing systems ..................................................6

      2.  Topics 4-5: Defendant's database and archival systems...........................8

      3.  Topic 6: Defendant's organizational structure...........................................9

      4.  Topics 8, 9, 13, and 17: Defendant's policies and procedures ..................9

III. CONCLUSION............................................................................................10

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Artis v. Deere & Co.*,
   276 F.R.D. 348 (N.D. Cal. 2011)..................................................................................4, 8

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 (9th Cir. 1975) ...........................................................................................3

*Cadent Ltd. v. 3M Unitek Corp.*,
   232 F.R.D. 625 (C.D. Cal. 2005) .....................................................................................3

*Dysthe v. Basic Research, L.L.C.*,
   273 F.R.D. 625 (C.D. Cal. 2011) .....................................................................................5

*Flores v. Bank of Am.*,
   No. 11-1817-JM(WVG), 2012 U.S. Dist. LEXIS 182393 (S.D. Cal. Dec. 27, 2012)...........5

*Kane v. Nat'l Action Fin. Servs., Inc.*,
   No. 11-cv-11505, 2012 WL 1658643 (E.D. Mich. May 11, 2012) ....................................7, 8

*Khalilpour v. CELLCO P'ship*,
   No. C. 09-02712 CW (MEJ), 2010 WL 1267749 (N.D. Cal. 2010)....................................4

*Knutson v. Schwan's Home Serv.*,
   No. 12-cv-964-GPC (DHB), 2013 WL 1222116 (S.D. Cal. Mar. 25, 2013).........................5

*In re LeBlanc*,
   559 Fed. Appx. 389 (5th Cir. 2014)..................................................................................3

*Martin v. Comcast Corp.*,
   No. 12 C 6421, 2015 U.S. Dist. LEXIS 3881 (N.D. Ill. Jan. 13, 2015).................................9

*Mirkarimi v. Nev. Prop. 1 LLC*,
   No. 12-cv-2160, 2014 WL 5390256 (S.D. Cal. Oct. 22, 2014).......................................7, 10

*Roesberg v. Johns-Manville Corp.*,
   85 F.R.D. 292 (E.D. Pa. 1980)..........................................................................................4

*In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   No. ML 08-1980 MMM(FMOx), 2010 WL 4942645 (C.D. Cal. July 29, 2010)..................4

*Vallabharpurapu v. Burger King Corp.*,
   276 F.R.D. 611 (N.D. Cal. 2011)......................................................................................5

*Vinole v. Countrywide Home Loans, Inc.*,
   571 F.3d 935 (9th Cir. 2009) ............................................................................................5

1

**STATUTES**

2

Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA")..................................... passim

3

**OTHER AUTHORITIES**

4

Fed. R. Civ. P. 23 ...................................................................................................2, 3, 4

5

Fed. R. Civ. P. 23(a)(3)...........................................................................................9

6

Fed. R. Civ. P. 26(c) ...............................................................................................3

7

Fed. R. Civ. P. 30(b)(6)...................................................................................1, 2, 3, 5

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Plaintiff William Bridge ("Plaintiff"), by his undersigned counsel, respectfully submits this memorandum of law in opposition to Defendant Credit One Financial d/b/a Credit One Bank, N.A.'s ("Defendant" or "Credit One") motion for protective order (Dkt. No. 28) (the "Motion").

## I.   BACKGROUND

This is a class action lawsuit brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  Plaintiff, who currently has and at no time had any business relationship with Defendant, alleges receipt of over fifty unsolicited, auto-dialed calls to his cellular telephone number made by or on behalf of Defendant.  Defendant is a financial institution in the business of extending low limit, high interest credit card products to subprime borrowers.  Defendant's Motion concerns Plaintiff's Rule 30(b)(6) deposition notice, which identifies eighteen topics on which Defendant's designee may be questioned.

Plaintiff initially served Defendant with the Rule 30(b)(6) notice electronically on December 12, 2014.[1]  At the scheduling conference held on December 19, 2014, counsel for Defendant discussed the notice.  Although plainly in receipt of the notice by that time, Defendant waited until January 14, 2015, after receiving an email inquiry from Plaintiff's counsel, to raise an objection to electronic service.  *See* January 14, 2015 Letter from Brian G. Anderson (attached as Exhibit A to the Declaration of Kyle McGee ("McGee Decl.")).  Plaintiff served Defendant with an amended Rule 30(b)(6) notice by hand on January 15, 2015.[2]

Counsel for the parties telephonically met and conferred on January 23, 2015 concerning the topics identified in the notice.  Rather than attempting in good faith to come to agreement on the proper scope of the deposition, counsel for Defendant immediately made clear that it had no interest in discussing Plaintiff's reasons for seeking testimony on those topics.  Indeed, Defendant's counsel would not even agree to discuss each topic separately, but insisted on addressing them generally.  When Plaintiff's counsel attempted to explain that the

---

[1] Defendant has attached a copy of this notice as Exhibit 2 to its filing.

[2] Defendant has attached a copy of this notice as Exhibit 3 to its filing.

1   topics relate to one or more Rule 23 requirement rather than (or in addition to) merits issues,

2   Defendant interrupted to say that it disagreed, without furnishing any rationale for that

3   position.   When pressed by Plaintiff's counsel about *its view* of the scope of discovery

4   permissible at this stage of the case, given the Court's bifurcation of discovery, Defendant's

5   counsel refused to answer.   After failing to extract any reasoning from Defendant's counsel,

6   Plaintiff's counsel was forced to agree that the parties had reached impasse, though Plaintiff

7   remained willing to address the topics individually and to otherwise confer in good faith about

8   their propriety.

9        There are several dialing systems, call notation systems, and call database or archival

10   systems in use by banks and debt collectors to place calls and keep records pertaining to their

11   collection efforts.   Each such system has comparable but different capabilities and maintains

12   records, generates reports, and provides access to call data in different ways.   The majority of

13   the deposition topics identified in Plaintiff's Rule 30(b)(6) notice (and Plaintiff's requests for

14   production, to which Defendant's Motion does not relate) concern Defendant's technical

15   infrastructure supporting its collection efforts.   Identification of the systems (*i.e.*, the dialing,

16   call notation, and database or archival systems) that Defendant employs will establish precisely

17   what kinds of information are available to demonstrate the number of class members, the

18   typicality of Plaintiff's claims and those of class members, the ascertainability of the proposed

19   class, and the predominance of questions of law and fact common to all class members' claims.

20       The noticed topics have very little to do with establishing Defendant's liability under

21   the TCPA.   Rather, they pertain to the evidence available to demonstrate that the members of

22   the class are sufficiently numerous and reasonably susceptible of identification based on

23   Defendant's records (numerosity, ascertainability), and that Defendant's conduct affected all

24   class members in essentially the same way (typicality, predominance).   Defendant knows this,

25   because counsel for Plaintiff explained it (before being interrupted) on the January 23, 2015

26   meet and confer call.   On that call, counsel for Defendant was incapable of explaining how the

27   identified deposition topics relate to anything other than those Rule 23 elements, and could

28   propose no limitation on their purported "overbreadth" that would address Defendant's alleged

1   concern that the topics pertain only to the liability issue.  This is telling.  Defendant's
2   "emergency" Motion is a ruse designed to cause the Court to order limitations on discovery
3   preventing Plaintiff from obtaining the evidence necessary to establish numerosity, typicality,
4   ascertainability, and predominance.  It is also a delay tactic to take advantage of this Court's
5   decision to impose a tight deadline on class certification discovery.  However, it is not a well-
6   grounded or meritorious request.  Thus, the Motion should be denied in its entirety.

7        Defendant challenges only topics 2, 3, 4, 5, 6, 8, 9, 13, and 17.  It concedes the
8   propriety of topics 1, 7, 10, 11, 12, 14, 15, 16, and 18, none of which are a subject of the
9   Motion.  Because Plaintiff will bear the burden of satisfying, by a preponderance of the
10  evidence, the requirements for class certification under Rule 23, Plaintiff is entitled to obtain,
11  during the class certification phase of the case, discovery pertaining to Defendant's unlawful
12  business practices inasmuch as they relate to any element of Rule 23.  As explained below,
13  every topic identified in Plaintiff's Rule 30(b)(6) notice and challenged by Defendant is
14  appropriate at this phase of discovery, and Plaintiff should be permitted to obtain the evidence
15  called for by Rule 23.

16  **II.    ARGUMENT**

17       **A.    Legal Standard**

18       Defendant acknowledges that it bears the burden of establishing "good cause" for entry
19  of the overbroad protective order it seeks.  Def. Br. at 4 (citing *E.E.O.C. v. Caesars*
20  *Entertainment, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006)); *accord Blankenship v. Hearst*
21  *Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  The moving party bears a "heavy burden" to
22  demonstrate why discovery should be denied.  *Blankenship*, 519 F.2d at 429.  In the context of
23  Rule 26(c), good cause requires more than the conclusory assertions contained in Defendant's
24  Motion.  Instead, it requires a showing of the "necessity of [the] issuance" of the protective
25  order sought, which means "a particular and specific demonstration of fact as distinguished
26  from stereotyped and conclusory statements."  *In re LeBlanc*, 559 Fed. Appx. 389, 392-93 (5th
27  Cir. 2014) (citations omitted); *see also Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629
28  (C.D. Cal. 2005) (party seeking protective order bears burden of showing specific prejudice or

harm that will result if no protective order is granted).  Defendant's Motion falls far short of this standard.  Significantly, "[t]o deny discovery where it is necessary to determine the existence of a class or set of subclasses would be an abuse of discretion."  *Artis v. Deere & Co.*, 276 F.R.D. 348, 351 (N.D. Cal. 2011).

> **B.     Each Noticed Topic Seeks Information Relevant to Class Certification and Defendant's Objections Are Meritless**

Defendants do not even bother to try to defend their assertion of burden.  *See, e.g.*, Def. Br. at 5.  A simple, unsubstantiated claim of burden fails.  To establish undue burden, the objecting party must come forward with specific grounds for refusing to provide the requested discovery.  *In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, No. ML 08-1980 MMM(FMOx), 2010 WL 4942645 at *5 (C.D. Cal. July 29, 2010). With respect to each discovery request, the responding party "must show specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is ... overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."  *Toys R Us-Delaware*, 2010 WL 4942645 at *5 (quoting *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980)) (internal citations omitted).  "In addition, a responding party must explain and/or establish the basis for his objection at the time he asserts his objection."  *Id.*  Here, Credit One did not submit any declarations under penalty of perjury offering evidence establishing the nature of the burden with respect to its discovery responses. *See Roesberg,* 85 F.R.D. at 296-97.  Nor does its Motion establish any such burden.

All that is left is Defendant's broad claim that the discovery sought is not relevant to class certification issues.  But Defendant concedes that discovery pertaining to whether a class of persons situated similarly to Plaintiff "does or does not exist," and whether such a class could "meet[] the requirements of Rule 23," is proper during this phase of the litigation.  Def. Br. at 6.  Moreover, it is well-established that "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the claim or defense of any party."  *Khalilpour v. CELLCO P'ship,*

---

4

No. C. 09-02712 CW (MEJ), 2010 WL 1267749, at *2 (N.D. Cal. 2010).  "[D]iscovery must be broad enough to give plaintiffs a 'realistic opportunity to meet (the certification) requirements.'"  *Flores v. Bank of Am.*, No. 11-1817-JM(WVG), 2012 U.S. Dist. LEXIS 182393, at *3 (S.D. Cal. Dec. 27, 2012) (internal quotations omitted).

Pre-class certification discovery may address, among other things, "the number of class members, the existence of common questions, the typicality of claims, and the representative's ability to represent the class."  *Dysthe v. Basic Research, L.L.C.*, 273 F.R.D. 625, 628 (C.D. Cal. 2011) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978)).  Inquiry into "the ascertainability of potential [c]lass members" is also proper at this stage.  *Knutson v. Schwan's Home Serv.*, No. 12-cv-964-GPC (DHB), 2013 WL 1222116, at *2 (S.D. Cal. Mar. 25, 2013).  "Although pre-certification discovery is discretionary, courts generally permit such discovery if it would substantiate the class allegations."  *Vallabharparapu v. Burger King Corp.,* 276 F.R.D. 611, 615 (N.D. Cal. 2011) (citing *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985)).  Prior to class certification, in other words, discovery regarding the contours of the class is appropriate.  *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 942 (9th Cir. 2009).

Defendant argues, in very broad brushstrokes, that the Rule 30(b)(6) notice represents an "attempt[] to search through Credit One's account holders' personal accounts and financial records," Def. Br. at 6.  That contention is entirely unsupported, and, indeed, belied, by the nature of the topics noticed.  Not one topic relates even indirectly to "personal accounts and financial records" of any person, aside from Plaintiff (topic 1, which is not a subject of the Motion).  Instead, the topics target Defendant's dialing systems (topics 2-3), database and archival systems (topics 4-5), organizational structure as it pertains to the alleged violations of the TCPA (topic 6), third party call centers retained by Defendant (topic 7), a set of policies and procedures relating to the alleged violations of the TCPA (topics 8-17), and Defendant's form cardholder agreements (topic 18).  Although Defendant finds it "implausible," Def. Br. at 3, that the Rule 30(b)(6) notice topics, which were drafted prior to the Court's bifurcation of discovery, pertain only to class certification issues, that is the fact of the matter.  Defendant's

liability under the TCPA is susceptible of straightforward demonstration, with minimal additional discovery, following certification of a class. As Defendant well knows, TCPA cases are won and lost at the class certification stage. The Motion is nothing more than Defendant's attempt to tilt the playing field in its favor in advance of engaging in any discovery, so as to avoid a direct confrontation based on the evidence.

Each of the topics challenged by Defendant is addressed in turn below.

### 1.    Topics 2-3: Defendant's dialing systems

Sophisticated commercial dialing systems generally dial telephone numbers according to parameters (such as call frequency or time of day restrictions) established by the calling party and feature a variety of "modes," including predictive dialing modes. Such dialing systems receive inputs via spreadsheets containing telephone numbers and flags or notes imposing restrictions or conditions on the placement of calls, and produce outputs, also typically in spreadsheet form, containing reports of calls made for a particular period (such as daily, weekly, monthly) using particular criteria for inclusion (such as the presence of specific kinds of flags or notes).

Plaintiff's second and third deposition topics seek the identification of Defendant's dialing systems and the capacities, particularly the reporting capacities, of those systems. Testimony on these topics is sought primarily because the types of dialers used by Defendant during the Class Period will demonstrate the types of dialer reports available to Plaintiff in discovery. The dialer reports, which Plaintiff will seek independently, relate directly to numerosity and ascertainability. Different dialers generate different kinds of reports. For example, certain dialers generate "cease and desist reports," which contain lists of calls made to numbers flagged or notated as "cease and desist." Certain dialers also generate "wrong number reports," which contain lists of calls made to numbers flagged or notated as "wrong number." Plaintiff's proposed class includes call recipients that have not consented to receive auto-dialed calls from Defendant. Such reports are instrumental in showing the size of the class of such persons and that membership in the class will be capable of being established by objective evidence, namely Defendant's records.

Testimony on these topics is also sought to address the predictive dialing and auto-dialing functions of Defendant's dialing systems.  Although whether a dialer constitutes an "automatic telephone dialing system" ("ATDS") as defined by the TCPA overlaps with the merits inquiry, even Defendant would surely concede that the class must exclude persons called through means that do not qualify as an ATDS.  Thus, if Defendant employs multiple dialing systems, Plaintiff must focus his discovery efforts on calls placed using ATDS equipment rather than other equipment, if any.  This portion of topics 2 and 3, therefore, also goes directly to numerosity insofar as every manually-dialed call must be excluded from the class.  These topics also relate to ascertainability because, again, Plaintiff must show that only persons receiving ATDS-initiated calls are capable of identification based on objective evidence.  The typicality, commonality, and predominance requirements are also implicated in these topics because Plaintiff alleges receipt of calls initiated by an ATDS, and so the class members must also have received ATDS-initiated calls.  Plaintiff must establish that the method of contact is a question of fact common to all class members, and that Defendant's use of ATDS equipment presents a common legal question that predominates over individualized issues associated with any manual dialing practices employed by Defendant.  *See Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-cv-11505, 2012 WL 1658643, at *6 (E.D. Mich. May 11, 2012) (holding that precertification discovery on allegedly common question of whether defendant's dialing system constitutes an ATDS was appropriate); *see also Mirkarimi v. Nev. Prop. 1 LLC*, No. 12-cv-2160, 2014 WL 5390256, at *2 (S.D. Cal. Oct. 22, 2014) (observing that, "[a]lthough discovery on the merits is usually deferred until it is certain that the case will proceed as a class action, the merits/certification distinction is not always clear," such that "[f]acts that are relevant to the class determination frequently will overlap with those relevant to the merits of the case.") (citation omitted).

Finally, Plaintiff will agree to limit the scope of topics 2 and 3 to the statutory period of 4 years preceding the date of filing of the Complaint.  Defendant's request for this relief should, therefore, be denied as moot.

**2.      Topics 4-5: Defendant's database and archival systems**

The core recordkeeping function of any debt collector, including the collections unit of banks like Defendant, is entrusted to the databases or archival systems identified in topics 4 and 5.  Typically, these systems maintain records of calls placed, including number dialed and date and time of call, as well as flags or notations placed on accounts.  The dialing systems identified in topics 2 and 3 are connected to the databases or archival systems identified in topics 4 and 5, and may receive inputs from the latter, while the dialing systems' reports are captured, in part or in whole, in the databases or archival systems.  Thus, when a call recipient informs Defendant that Defendant should not call that number for any reason, Defendant's calling agents will flag or notate the account associated in Defendant's records with that telephone number, and that flag or notation will be recorded in Defendant's database or archival system.

The types of flags and notations can vary based on the archival system used, and Plaintiff requires discovery of this information in order to propound precise requests for reports or other outputs capable of being extracted from the type of database or archival system Defendant maintains.  The ascertainability of the class depends in part on the forensic analysis of such reports or records, which will permit Plaintiff to identify those numbers called by Defendant where, *e.g.*, flags or notations demonstrating lack of consent appear.  These topics do not call for the actual identification of persons called in violation of the TCPA, but only of the underlying technical systems used by Defendant to create and maintain records of its collections activities.  However, discovery seeking the identification (by name and address as well as telephone number) is also appropriate at this stage.  *See, e.g.*, *Kane*, 2012 WL 1658643, at *6-7 (holding that precertification discovery of identities of absent class members in TCPA lawsuit, including "names, addresses, and telephone numbers," is appropriate because such information is "relevant to [p]laintiff's class action claims – to determine those other individuals whom [defendant] may have contacted improperly," in addition to being "a common practice in the class action context.") (citation omitted); *Artis*, 276 F.R.D. at 352 (permitting precertification discovery of "contact information and subsequent contact with

8

potential class members" because such information is "necessary to determine whether [p]laintiff's claims are typical of the class, and ultimately whether the action may be maintained as a class action.").

### 3.   Topic 6: Defendant's organizational structure

Contrary to Defendant's misreading, topic 6 targets only the personnel relevant to the records necessary to show class numerosity, typicality, ascertainability, and predominance. Defendant claims that "[t]he only relevant information is information related to calls to non-debtor third parties, not Credit One's customers and Card Holders."  Def. Br. at 9-10.  While Plaintiff does not agree that the class must exclude "Credit One's customers and Card Holders," Defendant's concession is revealing:  Plaintiff cannot obtain "information related to calls to non-debtor third parties" when Defendant denies making any such calls, without seeking to discover the basis for that denial.  Moreover, corporate organizational structure is among the most elementary of discovery topics, and Defendant's refusal to agree to provide a witness on this topic demonstrates only Defendant's baseless litigation posturing.

### 4.   Topics 8, 9, 13, and 17: Defendant's policies and procedures

Discovery on the policies and procedures identified in topics 8, 9, 13, and 17 is necessary to establish Defendant's common course of conduct with respect to the class as a whole, supporting the typicality requirement of Rule 23(a)(3), and to facilitate the interpretation of the call records that will support Plaintiff's motion for class certification.  For example, topic 9 calls for testimony on "Defendant's policies and procedures for using any databases, recording systems, archival systems, or other storage systems referred to in [topic] 4 …," serving merely to contextualize the testimony (and the records) pertaining to those archival systems.  Topic 8 similarly calls for testimony regarding "Defendant's policies and procedures for creating, developing, reviewing, approving, and implementing or conducting Calling Campaigns," using the dialing systems identified in topic 2.  Again, this testimony serves merely to contextualize the testimony (and dialer-generated reports) pertaining to those dialing systems.  Courts ordinarily recognize the propriety of discovery into the policies and procedures relating to the alleged misconduct.  *See, e.g., Martin v. Comcast Corp.*, No. 12 C

9

6421, 2015 U.S. Dist. LEXIS 3881, at *7-8 (N.D. Ill. Jan. 13, 2015) (finding discovery into defendant's policies and procedures regarding its call data and databases and handling of complaints regarding telephone calls appropriate prior to certification of class).

With respect to topic 13 – policies and procedures for ensuring compliance with federal law, including the TCPA – Defendant asserts, without argument, that this "could not possibly be anything but a merits based topic." Def. Br. at 10.  On the contrary, such policies, designed to ensure that the use of a dialing system does not result in calls to persons that did not consent to receive calls, relate to the uniformity of Defendant's calling practices, the typicality of Plaintiff's claim, and more generally, the scope and existence of the class, insofar as the class may include only persons that did not consent to receive calls.  In a limited sense, therefore, topic 13 is merits-related, but it is no more merits-related than it is class-related.  As Defendant acknowledges, merits and class issues overlap in TCPA litigation.  Def. Br. at 2; *see also Mirkarimi*, 2014 WL 5390256, at *2.

Topic 17 is designed to provide notice that testimony on the means by which the various policies and procedures (most of which Defendant does not challenge) set forth in topics 8-16 were created, changed, and/or put into practice will also be sought.  Defendant objects that this, too, is a "merits based" topic, Def. Br. at 11, but it pertains to the reasoning behind the creation of the policies, many of which Defendant did not object to.  To the extent that topics 8-16 are proper, therefore – and they are – topic 17 is equally so.

**III.    CONCLUSION**

For the foregoing reasons, Defendant's Motion should be denied in its entirety.

Dated:  February 10, 2015

By: /s/ Adam J. Levitt
Adam J. Levitt (admitted *pro hac vice*)
**GRANT & EISENHOFER P.A.**
30 North LaSalle Street, Suite 1200
Chicago, Illinois  60602
Tel: (312) 214-0000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Diane Zilka (admitted *pro hac vice*)
Kyle J. McGee (admitted *pro hac vice*)
**GRANT & EISENHOFER P.A.**
123 Justison Street
Wilmington, Delaware  19801
Tel: (302) 622-7000

Leonard H. Stone (Bar No. 5791)
**SHOOK & STONE CHTD.**
710 South Fourth Street
Las Vegas, Nevada  89101
Tel: (702) 385-2220

***Counsel for Plaintiff and the Proposed Class***

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER

1

## **CERTIFICATE OF SERVICE**

2

     I hereby certify that on February 10, 2015, I caused the foregoing document and all

3

accompanying documents to be filed on the Court's CM/ECF filing system, which notified all

4

counsel of record of such filing.

5

6

     Dated:  February 10, 2015

                          By: /s/ Adam J. Levitt

7

                                  Adam J. Levitt

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR PROTECTIVE ORDER