1  Patrick J. Reilly
   Nevada Bar No. 6103
2  Brian G. Anderson
   Nevada Bar No. 10500
3  R. Calder Huntington
   Nevada Bar No. 11996
4  HOLLAND & HART LLP
   9555 Hillwood Drive, 2nd Floor
5  Las Vegas, NV 89134
   Phone: (702) 222-2542
6  Fax: (702) 669-4650
   preilly@hollandhart.com
7  bganderson@hollandhart.com
   rchuntington@hollandhart.com
8
   *Attorneys for Defendant Credit One*
9  *Bank, N.A.*

10           **UNITED STATES DISTRICT COURT**

11               **DISTRICT OF NEVADA**

12  WILLIAM BRIDGE, individually and on      CASE NO.:  2:14-cv-01512-LDG-NJK
    behalf of all others similarly situated,
13                                            **MOTION TO STAY, COMPEL**
                    Plaintiff,                **ARBITRATION AND STRIKE CLASS**
14  v.                                        **CLAIMS, OR IN THE ALTERNATIVE,**
                                              **MOTION TO DISQUALIFY PLAINTIFF**
15  CREDIT ONE FINANCIAL, a Nevada           **AS PROPOSED CLASS**
    Corporation d/b/a CREDIT ONE BANK,       **REPRESENTATIVE, STRIKE CLASS**
16  N.A.                                      **CLAIMS AND DISMISS CONSUMER**
                                              **FRAUD/ DECEPTIVE TRADE**
17                  Defendant.                **PRACTICES CLAIM**

18                                            (Oral Argument Requested)

19

20        Defendant Credit One Bank, N.A. ("Credit One"), by and through its undersigned

21  counsel, Holland & Hart LLP, in response to Plaintiff's First Amended Complaint (Dkt. No.

22  95), hereby moves to Stay, Compel Arbitration and Strike Class Claims, and/or in the

23  Alternative, to Disqualify Plaintiff as Proposed Class Representative, Strike Class Claims and

24  Dismiss Plaintiff's Consumer Fraud/Nevada Deceptive Trade Practices Claim pursuant to Fed.

25  R. Civ. P. 12(b)(6).

26  / / /

27  / / /

28

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

1    This Motion is made and based upon the attached Memorandum of Points and
2  Authorities, the exhibits, declarations, and transcripts attached hereto, and any oral argument
3  allowed by the Court at any hearing on this Motion.

4    DATED this 7th day of August, 2015.

5                                         */s/ Brian G. Anderson*

6                                         _____
                                          Patrick J. Reilly
7                                         Brian G. Anderson
                                          R. Calder Huntington
8                                         HOLLAND & HART LLP
                                          9555 Hillwood Drive, 2nd Floor
9                                         Las Vegas, NV 89134

10                                        *Attorneys for Defendant Credit One*
                                          *Bank, N.A.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

1
2

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Bureau of Shipping v. Tencara Shipyard S.P.A.*,
   170 F.3d 349 (2d Cir. 1999) ................................................................................ 14

*Archer v. Bank of Am. Corp.*,
   2:11–cv–1264, 2011 WL 6752562 (D. Nev. Dec. 23, 2011) ................................ 26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 24, 25

*Baeza v. Bank of Am. N.A.*,
   No. 3:11–cv–767–RCJ–VPC, 2012 WL 4062809 (D. Nev. Sept. 14, 2012) ........ 26

*Barmettler v. Reno Air, Inc.*,
   114 Nev. 441, 956 P.2d 1382 (1998) .................................................................. 19

*Bates v. Nevada Resort Properties Polo Towers Ltd. Partnership*,
   124 Nev. 1451, 238 P.3d 795 (Nev. 2008) ................................................... 11, 13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................... 25

*Blaustein v. Huete*,
   449 Fed. Appx. 347 (5th Cir. 2011) ................................................................... 15

*Bridas S.A.P.I.C. v. Government of Turkmenistan*,
   345 F.3d 347 (5th Cir. 2003) ............................................................................. 15

*CD Partners, LLC v. Grizzle*,
   424 F.3d 795 (8th Cir. 2005) ............................................................................. 14

*Cohen v. Laiti*,
   98 F.R.D. 581 (S.D.N.Y. 1983) .................................................................... 21, 24

*Cohn v. Ritz Transp., Inc.*,
   No. 2:11–CV–1832-JCM-NJK, 2014 WL 1577295 (D. Nev. Apr. 17, 2014) ......... 9

*Comedy Club, Inc. v. Improv West Assocs.*,
   553 F.3d 1277 (9th Cir. 2009) ............................................................................. 8

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ....................................................................... 9, 12

*Continental U.K. Ltd. v. Anagel Confidence Compania*,
   658 F. Supp. 809 (S.D.N.Y. 1987) ..................................................................... 11

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

i

*Darvin v. Int'l Harvester*,
    610 F. Supp. 255 (S.D.N.Y. 1985).................................................................. 16, 21, 24

*Davenport v. Homecomings Financial, LLC*,
    2014 WL 1318964 (Nev. Mar. 31, 2014) ........................................................ 28

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*,
    269 F.3d 187 (3d Cir. 2001).............................................................................. 15

*Easton Bus. Opportunities, Inc. v. Town Exec. Suites–Eastern Marketplace, LLC*,
    126 NAO 13, 230 P.3d 827 (Nev. 2010) ........................................................ 11

*Fosmire v. Progressive Max Ins. Co.*,
    277 F.R.D. 625 (W.D. Wash. 2011) ................................................................ 17

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)............................................................................. 16

*German v. Fed. Home Loan Mortg. Corp.*,
    168 F.R.D. 145 (S.D.N.Y. 1996) ..................................................................... 16

*Graves v. BP America, Inc.*,
    568 F. 3d 221 (5th Cir. 2009) .......................................................................... 15

*Great American Ins. Co. v. Hinkle Contracting Corp.*,
    497 Fed. Appx. 348 (4th Cir. 2012).................................................................. 9

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) ........................................................................... 16

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas*,
    464 F.3d 514 (5th Cir. 2006) ........................................................................... 15

*Hill Cty. v. Shaw & Borden Co.*,
    225 F. 475 (9th Cir. 1915) ............................................................................... 20

*Holland Livestock Ranch v. U.S.*,
    655 F.2d 1002 (9th Cir. 1981) ......................................................................... 13

*Horner v. Mortgage Electronic Registration Systems, Inc.*,
    Case No. 2:12–CV–269 ............................................................................... 27, 28

*Iqbal*, at 679 ............................................................................................................. 26

*J.H. Cohn & Co. v. American Appraisal Assocs., Inc.*,
    628 F.2d 994 (7th Cir. 1980) ........................................................................... 17

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

*Jovel v. Boiron, Inc.*,
    2014 WL 1027874 (C.D. Cal. Feb. 27, 2014) ........................................................ 21, 24

*Joyner v. GE Healthcare, C.A.*,
    No. 4:08–2563–TLW–TER, 2009 WL 3063040 (D. S.C. Sept.18, 2009) ........................... 9

*Kaldi v. Farmers Ins. Exchange*,
    117 Nev. 273, 21 P.3d 16 (2001) ................................................................................ 11

*Kaplan v. Pomerantz*,
    132 F.R.D. 504 (N.D. Ill. 1990) .................................................................................. 21

*Kassover v. Computer Depot, Inc.*,
    691 F. Supp. 1205 (D. Minn. 1987) ........................................................................ 21, 24

*Kervin v. GC Services, Ltd. Partnership*,
    2:13–cv–01461–MMD–PAL, 2014 WL 584966 (D. Nev. Feb. 12, 2014) ...................... 27, 28

*Kline v. Wolf*,
    702 F.2d 400 (2d Cir. 1983) ...................................................................................... 21

*Knori v. State, ex rel., Dept. of Health, Office of Medicaid*,
    109 P.3d 905 (Wyo. 2005) .......................................................................................... 13

*Labou v. Cellco P'ship*,
    2014 WL 824225 (E.D. Cal. Mar. 3, 2014) ................................................................. 16

*Lalwani v. Wells Fargo Bank*,
    2:11–cv–0084, 2011 WL 4574338 (D. Nev. Sept. 30, 2011) ........................................ 26

*Las Vegas Convention and Visitors Authority v. Miller*,
    124 Nev. 669, 191 P.3d 1138 (2008) .......................................................................... 12

*Lee v. BAC Home Loans Servicing, LP*,
    2:11–cv–1583, 2011 WL 5827202 (D. Nev. Nov. 18, 2011) ......................................... 26

*Letizia v. Prudential Bache Sec., Inc.*,
    802 F.2d 1185 (9th Cir. 1986) ..................................................................................... 9

*Long v. Silver*,
    248 F.3d 309 (4th Cir. 2001) ...................................................................................... 9

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ..................................................................................... 28

*Mundi v. Union Sec. Life Ins. Co.*,
    555 F.3d 1042 (9th Cir. 2009) ..................................................................................... 8

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

iii

*Nevis v. Fidelity New York, F.A.*,
    104 Nev. 576, 763 P.2d 345 (1988) ............................................................. 12

*O'Neil v. Appel*,
    165 F.R.D. 479 (W.D. Mich. 1996) ....................................................... 17, 18

*Pagan v. The New Wilson's Meats, Inc.*,
    2011 WL 1876027 (E.D. Pa. May 17, 2011) ............................................... 17

*Peatrowsky v. Persolve*,
    2:12–cv–00935–JAD–VCF, 2014 WL 1215061 (D. Nev. Mar. 24, 2014) ............... 25, 27

*PRM Energy Sys., Inc. v. Primenergy, LLC*,
    592 F.3d 830 (8th Cir. 2010) ................................................................. 11

*Rawleigh, Moses & Co. v. Kornberg*,
    210 F.2d 176 (8th Cir. 1954) ................................................................. 11

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991) ................................................................... 8

*Reyes v. BAC Home Loans Servicing*,
    2012 WL 2367803 (D. Nev. 2012) ......................................................... 26

*Ryan v. Jersey Mike's Franchise Sys.*,
    2014 WL 1292930 (S.D. Cal. Mar. 28, 2014) ........................................... 21

*Sanford v. MemberWorks, Inc.*,
    625 F.3d 550 (9th Cir. 2010) ................................................................. 28

*Savino v. Computer Credit, Inc.*,
    164 F.3d 81 (2d Cir. 1998) .................................................................... 21

*Schlotfeldt v. Charter Hosp. of Las Vegas*,
    112 Nev. 42, 910 P.2d 271 (1996) ......................................................... 11

*Simula Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ................................................................... 8

*Smyth v. Carter*,
    168 F.R.D. 28 (W.D. Va. 1996) ............................................................. 21

*Soo Line R.R. v. St. Louis Southwestern Ry., Co.*,
    125 F.3d 481 (7th Cir. 1997) ................................................................. 25

*Spagnola v. Chubb Corp.*,
    264 F.R.D. 76 (S.D.N.Y. 2010) ............................................................. 16

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

iv

*Sprewell v. Golden State Warriors,*
  266 F.3d 979 (9th Cir. 2001) .................................................................... 25

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
  559 U.S. 662, 130 S.Ct. 1758 (2010) ......................................................... 8

*Tamsco Properties, LLC v. Langemeier,*
  597 Fed. Appx. 428 (9th Cir. 2015) ........................................................... 11

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n,*
  64 F.3d 773 (2d Cir. 1995) ............................................................. 9, 10, 13

*Thorne v. Wagner,*
  Case No. 2:06–cv–492, 2007 WL 496373 (D. Nev. Feb. 13, 2007) ........... 28

*Truck Ins. Exch. v. Palmer J. Swanson, Inc.,*
  124 Nev. 629, 189 P.3d 656 (2008) ........................................................... 11

*Trump v. Eighth Judicial Dist. Court,*
  109 Nev. 687, 857 P.2d 740 (Nev. 1993) .................................................. 12

*Viega GmbH v. Eighth Jud. Dist. Ct.,*
  328 P.3d 1152 (Nev. 2014) ........................................................................ 11

*Vinole v. Countrywide Home Loans, Inc.,*
  571 F.3d 935 (9th Cir. 2009) ..................................................................... 16

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.,*
  489 U.S. 468, 109 S.Ct. 1248 (1989) ........................................................... 8

*Wash. Mut. Fin. Grp., LLC v. Bailey,*
  364 F.3d 260 (5th Cir. 2004) ..................................................................... 12

*White Cap Indus., Inc. v. Ruppert,*
  119 Nev. 126, 67 P.3d 318 (2003) ............................................................. 11

*Winco Window Co., Inc. v. G & S Glass & Supply, Inc.,*
  2015 WL 3604072 (E.D. Mo. 2015) .......................................................... 11

## **S**TATUTES

18 U.S.C. § 1030 ................................................................................... 2, 18

18 U.S.C. § 1030(2)(A), (C) ...................................................................... 18

FRCP 9 ............................................................................................... 27, 28

FRCP 12 ................................................................................................... 24

FRCP 23 ................................................................................................... 16

**H**OLLAND **& H**ART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

v

NRS 41.600 ................................................................................................................... 27

NRS 80.015 ........................................................................................................... 26, 27

NRS 598 .......................................................................................................... 26, 27, 28

### OTHER AUTHORITIES

3 AM.JUR. 2d *Agency* § 16 ........................................................................................ 14

28 AM.JUR. 2d *Estoppel and Waiver* § 62 ............................................................... 13

Restatement (Second) of Agency § 330 (1958) ........................................................ 14

Restatement (Second) of Agency § 348 (1958) ........................................................ 11

Restatement (Second) of Agency § 354 ..................................................................... 11

### TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF FACTS ....................................................................................... 4

   A.  Credit One's Business Practices and Cardholder and Arbitration Agreement ................... 4

   B.  Plaintiff Provides Credit One With His Cell Phone Number and Verifies His Mother's Personal Information to Gain Access to her Account ...................... 5

      1.  Plaintiff Has Fundamentally Changed His Story and the Basis of His Claims as He Now Alleges He Called His Mother's Creditors, Including Credit One, to Determine What Debts Would Remain in the Event She Passed Away ...................... 5

      2.  Credit One's Automated Account Information Line Requires the Caller to Verify His or Her Cardholder Account Credentials ...................... 6

   C.  Credit One Makes Calls Intended to Reach its Account Holder, Plaintiff's Mother .......... 8

III.  The Court Should Enter a Stay, Compel Arbitration, and Strike Class ............................ 8

   A.  Arbitration Clauses Are Entitled to a Presumption of Arbitrability .................. 8

   B.  Nonsignatories May Be Bound by Arbitration Agreements ...................... 9

      1.  Plaintiff is Bound By the Arbitration Provision Based Upon Agency Principles ........ 11

      2.  Plaintiff is Precluded Under Estoppel from Avoiding the Arbitration Provision ......... 12

      3.  Plaintiff Should Not Benefit From His Fraudulent or Negligent Conduct Related to His Mother's Contractual Relationship with Credit One .......... 13

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

4. By Embracing and Interjecting Himself Into a Contractual Arrangement, Plaintiff is Bound by the Arbitration Provision ............................................................ 15

IV.    Alternatively, the Court Should Disqualify Plaintiff as the Proposed Class Representative and Strike the Alleged Class................................................................. 16

A. The Unique and Improper Conduct Giving Rise to Plaintiff's Claims Subject Him to Unique Defenses Which Will Become the Focus of the Litigation ............................ 16

B. Plaintiff's TCPA Claim Arises From His Own Fraudulent Actions ................................ 17

C. Plaintiff Cannot Serve as a Class Representative Due to His Complete Lack of Credibility Regarding Key Issues in This Case.................................................................. 21

V. Plaintiff's Consumer Fraud/ Nevada Deceptive Trade Practices Act Claim Must Be Dismissed ............................................................................................................................ 24

A. Legal Standard.................................................................................................................... 24

B. Plaintiff's Deceptive Trade Practices Act Claim Must Be Dismissed Because Credit One's Alleged Wrongful Conduct  Does Not Involve the Sale of Goods or Services ............................................................................................................................... 25

C. Plaintiff's Consumer Fraud/NDTPA Claim is Not Pleaded With Particularity ............... 27

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff's First Amended Complaint ("Amended Complaint") is a radical departure from his original Complaint.  The abundant inconsistencies with the allegations between the pleadings confirms that Plaintiff and his counsel did little, if any, investigation into the underlying facts prior to filing suit.  More importantly, it is clear that Plaintiff cannot properly represent the alleged class because he is subject to an arbitration agreement and because his own fraudulent conduct gave rise to his claim.

Plaintiff used his cell phone to improperly access his mother's Credit One account information.  Plaintiff validated his mother's security information by correctly entering her sixteen digit account number and the last four digits of her social security number.  Thereafter, Plaintiff began receiving calls on his cellular phone regarding his mother's Credit One account.[1] As a Credit One cardholder, Plaintiff's mother is subject to the Credit One Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement ("Cardholder and Arbitration Agreement"), which encompasses all claims made by anyone connected with the Cardholders, such as an authorized user of the account, agents, representatives and heirs.  Ms. Bridge has also provided Credit One with express written consent to be contacted at any phone number provided to Credit One at any time, including the phone numbers which were used to contact Credit One.

To access his mother's account information, Plaintiff satisfied Credit One's two-step authentication procedure—which directed the caller to enter "your" sixteen digit account number and social security number—using his mother's personal information.  Thus, whether authorized by his mother (or the law) or not, Plaintiff represented to Credit One that he was his mother, utilized (properly or improperly) his mother's private and personal verification

---

[1]  Plaintiff's acknowledgement of having called Credit One in his Amended Complaint directly contradicts the allegations in his original Complaint.  Plaintiff initially alleged that Credit One acquired his cellular number through skip tracing or through some other third party. (Dkt. # 1 at ¶ 26). Plaintiff alleged he believed Credit One was trying to contact his son, also named William Bridge, and that he had never called or otherwise provided his phone number to Credit One.  (*Id.* at ¶¶ 26-27).

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

information, and obtained information regarding her account for future use.  Credit One had no reason to know or believe that Plaintiff had posed as his mother or that the phone number Plaintiff used to authenticate his mother's account was anyone other than its cardholder.  It believed—from the accurate entry of her account number and the last four digits of her social security number—that Plaintiff was his mother.

Regardless of how Plaintiff attempts to "spin" his conduct, his factual allegations direct one of two possible conclusions.  Plaintiff was calling as his mother's agent, interjected himself into her contractual relationship with Credit One, and therefore is subject to the terms of the Cardholder and Arbitration Agreement.  The Arbitration Provision expressly compels the arbitration of claims made by agents, representatives, and heirs, and includes claims related to any communications or transactions, whether authorized or not, relating to the Cardholder's account.  As his mother's agent, representative or heir, or through equitable estoppel, Plaintiff has subjected himself to the Cardholder and Arbitration Agreement and must be compelled to arbitrate any claims against Credit One.  Accordingly, the Court should stay this action, compel arbitration, and dismiss the class allegations, which are expressly barred by the Cardholder and Arbitration Agreement.

In the alternative, Plaintiff must be disqualified as a proposed class representative, and the class allegations must be dismissed, because Plaintiff's claimed TCPA arises from his own violation of federal criminal statute, and because the putative class members presumably engaged in similar illegal conduct.  Specifically, the federal "Computer Fraud and Abuse Act" is violated when, *inter alia*, a person "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information contained in a financial record of a financial institution, or of a card issuer . . . or information from any protected computer." 18 U.S.C. § 1030(2)(A), (C).  Here, Plaintiff's TCPA claims arise directly from his illegal conduct.  Indeed, Plaintiff now alleges that his mother "provided Plaintiff with no instruction or consent to contact any third parties regarding her financial obligations."  Amended Complaint ("FAC")

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

1   (Dkt. # 95) at ¶ 29.  Thus, any similarly situated putative class members would be equally guilty

2   of violating federal law that led directly to their alleged claims.

3        Through his intentional and unauthorized contact with Credit One's interactive voice

4   response ("IVR") technology, and by misrepresenting himself as a Credit One Cardholder,

5   Plaintiff illegally accessed "information contained in a financial record of a financial institution,

6   or of a card issuer . . . or information from any protected computer."  In addition to violating the

7   Computer Fraud and Abuse Act, Plaintiff's conduct constitutes civil fraud as well.   He

8   misrepresented his identity by calling Credit One on January 18, 2014 and authenticating his

9   mother's account.  Credit One relied upon Plaintiff's representations and treated Plaintiff as a

10  Cardholder and provided him with access to his mother's account information.  Furthermore,

11  and consistent with the Cardholder and Arbitration Agreement and Plaintiff's representations,

12  Credit One associated Plaintiff's phone number with his mother's account, which gave rise to

13  Plaintiff's TCPA claims.   Although the highly unique circumstances which precipitated

14  Plaintiff's claim clearly demonstrate the individualized nature of his situation and Credit One's

15  associated defenses, Plaintiff's fraudulent conduct, whether criminal or civil, make him an

16  improper representative of any class.  Thus, the Court should disqualify Plaintiff as a potential

17  class representative.

18        Finally, the Court should dismiss Plaintiff's Nevada Deceptive Trade Practices Act

19  ("NDTPA") claim for failure to state a claim upon which relief may be granted.  Plaintiff

20  alleges that Credit One's debt collection calls constituted a "deceptive trade practice" because it

21  violated the TCPA, a federal statute.  The NDTPA can only be violated, however, if a person

22  violates a statute or regulation relating to *the sale or lease of goods or services*.  Debt collection

23  efforts do not relate to the sale or lease of goods or services.  And Credit One's alleged TCPA

24  violations *are not related to the sale or lease of goods or services*.  Indeed, none of the

25  allegations in the Amended Complaint even suggests Credit One sold or leased goods or

26  services to Plaintiff.  Accordingly, this Court must dismiss Plaintiff's NDTPA claim because

27  Credit One's alleged conduct does not give rise to a NDTPA claim as a matter of law.

28

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

3

## II.    STATEMENT OF FACTS

### A.    Credit One's Business Practices and Cardholder and Arbitration Agreement

Credit One is a national, U.S. based bank specializing in credit cards and services approximately five million cardholders across the United States.  Declaration of Gary Harwood **Exhibit A**.  Credit One has been operating out of Las Vegas since 1999 and currently employs over four hundred individuals in Nevada.  *Id.* Credit One calls its customers, or "Cardholders," only at the telephone numbers they provide to discuss issues related to their Credit One accounts.  *See id.*  Credit One's standard Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement ("Cardholder and Arbitration Agreement") provides as follows:

> COMMUNICATIONS:  You are providing **express written permission authorizing Credit One Bank or its agents to contact you at any phone number** (including mobile, cellular/wireless, or similar devices) or email address you provide at anytime, for any lawful purpose. . . .   **Phone numbers and email addresses you provide include those you give to us, those from which you contact us** or which we obtain through other means.  Such lawful purposes include, but are not limited to: obtaining information; activation of the card for verification and identification purposes; account transactions or servicing related matters; suspected fraud or identity theft; collection on the Account . . .

*Id.*; *see also* **Exhibit B** at ¶ 19 (Cardholder and Arbitration Agreement) (emphasis added).

The "Arbitration Provision"[2] of the Cardholder and Arbitration Agreement confirms that claims brought by any agent, representative, or heir is subject to arbitration:

> **Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs, or a trustee in bankruptcy**. Similarly, Claims subject to arbitration include not only Claims that relate directly to us, a parent company, affiliated company, and any predecessors…

---

[2] The heading to the Arbitration Provision provides, in bold, capital letters, as follows:

> **PLEASE READ THIS PROVISION OF YOUR CARD AGREEMENT CAREFULLY. IT PROVIDES THAT EITHER YOU OR WE CAN REQUIRE THAT ANY CONTROVERSY OR DISPUTE BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING…**

Exhibit B at p. 6.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

4

*Id.* at p. 6 (emphasis added).   Additionally, the Arbitration Provision broadly encompasses, without limitation, the following types of claims:

> Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or **communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not**; billing, billing errors, credit reporting, the posting of transactions, payment or credits, **or collections matters relating to your account** …

*Id.*

Further, the Arbitration Provision confirms that "[i]f you or we require arbitration of a particular Claim, neither you, we, nor any other person may pursue the Claim in any litigation, ***whether as a class action***, private attorney general action, other representative action or otherwise."   *Id.*   Thus, Credit One's Cardholders provide Credit One with express written permission to contact them at the phone numbers they provide to Credit One, including phone numbers provided in the application process, through online banking, and/or through the Cardholder's calls to Credit One for account related issues.   *Id.*   Additionally, Credit One's customers agree that any claim they, or their agents representatives or heirs assert against Credit one is subject to arbitration.   *Id.*

### B.   Plaintiff Provides Credit One With His Cell Phone Number and Verifies His Mother's Personal Information to Gain Access to her Account

#### 1.   Plaintiff Has Fundamentally Changed His Story and the Basis of His Claims as He Now Alleges He Called His Mother's Creditors, Including Credit One, to Determine What Debts Would Remain in the Event She Passed Away

In his original Complaint, Plaintiff alleged that his son, who has a similar name but a different residential address and phone numbers, has or had an account with Credit One, and that Credit One obtained his phone number through skip tracing.   Compl. (Dkt. # 1) at ¶ 26. Plaintiff further alleged that "[a]t no time did Plaintiff ever provide his cellular telephone number to Credit One." *See id* ¶ 27.   Plaintiff has now recanted those allegations.

Nine months after filing his Complaint, Plaintiff acknowledges that ***he*** in fact called Credit One "on or around January 18, 2014" with his cell phone to determine his mother's

current indebtedness (and has completely dropped any allegations regarding his son).  FAC at ¶ 30.  At that time, Plaintiff's mother underwent a medical procedure.  During her procedure, Plaintiff spent several nights at his mother's house.  *Id.* ¶¶ 29-30; *see also* a true and correct copy the relevant portion of the July 1, 2015 Deposition Transcript of Plaintiff William Bridge attached hereto as **Exhibit C**, at p. 110:7-15.)  Plaintiff also pays for his cellular phone and his mother's cellular phone on a "family plan" account with Verizon held solely in Plaintiff's name, whereby Plaintiff receives and pays all bills associated with the plan.  Exhibit C at 89-92; *see also* Plaintiff's Responses and Objections to Interrogatories attached hereto as **Exhibit D**, at p 5 Response No. 6.

While at his mother's house, and upon learning that her condition had taken a turn for the worse, Plaintiff began going through his mother's bills to learn of potential liabilities of her estate, in the event she passed away.  Exhibit C Depo at 114:7-10 ("The goal in my mind at the time was if she took a turn for the worst [sic] and things didn't turn out, turned out for the very worst, I wanted to know what we were going to have to deal with as far as any of her accounts.")  Nevertheless, Plaintiff alleges that his "mother, who was hospitalized at the time, was not aware that Plaintiff did so, and [claims she] provided Plaintiff with no instruction or consent to contact any third parties regarding her financial obligations."  FAC at ¶ 29.

### 2. Credit One's Automated Account Information Line Requires the Caller to Verify His or Her Cardholder Account Credentials

Plaintiff purportedly contacted several of his mother's creditors with his cell phone, including Credit One.  FAC at ¶ 30.  Plaintiff's telephone records confirm that on January 18, 2014, Plaintiff called 877-825-3242 at 10:06 a.m. Eastern Time, a toll-free number for Credit One's customers.  *See id.*; *see also* Exhibit C at pp. 148-149; 152; a true and correct copy of Plaintiff's Verizon Call Records is attached hereto as **Exhibit E**; a true and correct printout from Credit One's "Contact Us" webpage attached hereto as **Exhibit F**.[3]  Credit One provides the toll-free number to its customers to allow them to obtain "Automated Account Information"

---

[3] Also available online at: https://www.creditonebank.com/contact-us.aspx (accessed Aug. 8, 2015).

**HOLLAND & HART** LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

or to report lost or stolen cards. *Id.* When calling Credit One's Automated Account Information, callers reach Credit One's IVR technology which allows customers to interact with Credit One's system via a telephone keypad and allows Credit One to service high call volumes and to provide extended business hours. *See* Exhibit A; FAC at ¶ 27. Customer calls are initially greeted by the following automated message and instructions:

> "Welcome to Credit One Bank. Your account now includes an automatic 1% reward on gas purchases. Press 1 for English… <u>Please enter *your* sixteen digit card number.</u>"

Exhibit A (emphasis added).[4]

When instructed to "enter **your** sixteen digit card number," Plaintiff correctly authenticated Ms. Bridge's account number by entering it from her billing statement. *See* Credit One Records; Verizon Records (emphasis added); *see also, e.g.,* Exhibit C at 125:4-19. Upon successful verification of a cardholder's account number, Credit One's computer system further instructs its cardholders as follows:

> "<u>Please enter the last four digits of *your* Social Security Number.</u>"

Exhibit A (emphasis added).

When instructed to "enter the last four digits of **your** Social Security Number," Plaintiff *again* successfully validated his mother's information. *Id.* (emphasis added). Upon the successful authentication of two personal verification requirements, Plaintiff was instructed to "Please stay on the line while we access **your** account." *Id.* (emphasis added). Credit One's computer system confirmed that the information entered was accurate and Plaintiff had performed a "Full" IVR Authentication and the phone number used to access his mother's information became associated with his mother's Credit One account, thereby gaining full access to his mother's account information on Credit One's computer systems, including the account balance, delinquency status, payment due date, etc. *See* a true and correct copy of Credit One IVR Authentication Records related to Plaintiff's call attached hereto as **Exhibit H**. Contrary to his deposition testimony, Plaintiff did not speak with a live representative. Ex. A.

---

[4] A true and correct copy of an audio file (.mp3) recording of an IVR call made to a "test" Credit One account is provided on a compact disc served with this Motion and designated as **Exhibit G**.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

### C.   Credit One Makes Calls Intended to Reach its Account Holder, Plaintiff's Mother

Subsequent to Plaintiff's call to Credit One, Plaintiff's mother's account became delinquent and calls were made to recover the debt.  Plaintiff alleges that "Credit One initiated more than 100 such calls to Plaintiff's cellular telephone number between January 2014 and March 2014." FAC at ¶ 24.  Plaintiff alleges he "instructed the Credit One representative that he had no relationship with Credit One, and instructed Credit One to stop calling his cellular telephone on or around March 18, 2014."  *Id.* at ¶ 26.  No subsequent calls were made to Plaintiff's phone.  Thus, Credit One called the subject phone number with the intention of reaching Ms. Bridge, its cardholder, in reliance upon the provisions of the Cardholder and Arbitration Agreement and Plaintiff's verification of his mother's personal account information.

### III.   The Court Should Enter a Stay, Compel Arbitration, and Strike Class

### A.   Arbitration Clauses Are Entitled to a Presumption of Arbitrability

"It is well established that where the contract contains an arbitration clause, there is a presumption of arbitrability." *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009) (citations omitted).  Thus, while the court employs general state law principles of contract interpretation, it must do so "while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1044 (9th Cir. 2009).  "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664, 130 S.Ct. 1758, 1763 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 1256 (1989)).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" and the district court must order arbitration if it is satisfied that the making of the agreement for arbitration is not in issue. *Simula Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (citation omitted); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 474 (9th Cir. 1991).

A court may also "consider materials outside the pleadings to determine whether a valid arbitration agreement exists." *Joyner v. GE Healthcare, C.A.*, No. 4:08–2563–TLW–TER, 2009 WL 3063040, at *2 (D. S.C. Sept.18, 2009). And "a broadly-worded arbitration clause applies to disputes that do not arise under the governing contract when a 'significant relationship' exists between the asserted claims and the contract in which the arbitration clause is contained." *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001); *see also Great American Ins. Co. v. Hinkle Contracting Corp.*, 497 Fed. Appx. 348, 354 (4th Cir. 2012) (a "broad arbitration clauses like the present one embrace every dispute between the parties having a significant relationship to the contract, regardless of the label that a party chooses to assign to a particular claim.")

Here, the allegations in the Amended Complaint, Plaintiff's recent deposition testimony, and the Cardholder and Arbitration Agreement confirm that Plaintiff's claim is subject to the Arbitration Provision. Utilizing information available to Plaintiff due to his close relationship with his mother, Plaintiff engaged in contractually governed conduct with Credit One. Plaintiff's (mis)conduct gave rise to the claims alleged against Credit One and subjected himself to the Arbitration Provision. Accordingly, the Court should stay this litigation and compel arbitration.

**B.      Nonsignatories May Be Bound by Arbitration Agreements**

The Ninth Circuit has explained that "nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles" including, "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (citing *Letizia v. Prudential Bache Sec., Inc.*, 802 F.2d 1185, 1188 (9th Cir. 1986); *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)); *see also Cohn v. Ritz Transp., Inc.*, No. 2:11–CV–1832-JCM-NJK, 2014 WL 1577295, at *16 (D. Nev. Apr. 17, 2014) (citing *Comer*, 436 F.3d at 1101. Further, non-signatories may assume the obligations contained in an arbitration clause where there is a sufficiently close relationship to justify doing so, and the

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

9

circumstances warrant that result. *See Thomson–CSF, S.A.*, 64 F.3d at 779.6 In *Thomson–CSF, S.A. v. American Arbitration Assoc.*, 64 F.3d 773 (2d Cir. 1995).

Here, it is undisputed that Plaintiff's mother is subject to Credit One's Cardholder and Arbitration Agreement.  Dkt. 95 at ¶ 28.  The Arbitration Provision broadly encompasses, "communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not . . . or collections matters relating to your account …" Exhibit B at p. 6 (emphasis added).  The Agreement also establishes that "[a]ny questions about what Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced."  *Id.*  Furthermore, the Agreement provides that "Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs."  *Id.* (emphasis added).

Thus, the broadly-worded Cardholder and Arbitration Agreement plainly applies to all claims related to unauthorized or authorized communications or transactions involving the Cardholder's accounts, collection efforts or any matters relating to the Cardholder's accounts. Not only is there a significant relationship between Plaintiff and his mother, Plaintiff's intentional conduct giving rise to his claims against Credit One relate to conduct governed by the Cardholder and Arbitration Agreement.  Plaintiff posed as his mother to access her Credit One account information.  Through his intentional conduct, Plaintiff became bound by the Arbitration Provision under theories of agency and estoppel.  Indeed, by taking advantage, and accepting the benefits, of the Cardholder and Arbitration Agreement, Plaintiff also assumed its burdens and is entitled to no greater rights than those possessed by the signatories.  Thus, the Court should stay this litigation, compel arbitration, and strike the alleged class.

/ / /

/ / /

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

### 1.   Plaintiff is Bound By the Arbitration Provision Based Upon Agency Principles

Courts consistently hold that "when a nonsignatory and one of the parties to an arbitration agreement have an agency relationship, the arbitration agreement may be enforced against the nonsignatory." *Tamsco Properties, LLC v. Langemeier*, 597 Fed. Appx. 428, 429 (9th Cir. 2015) (affiliated individual acting on behalf of principal must be treated as having done so as agents); *see also Continental U.K. Ltd. v. Anagel Confidence Compania*, 658 F. Supp. 809, 813 (S.D.N.Y. 1987) (holding that if a "party's arbitration clause is expressly incorporated into a bill of lading, nonsignatories ... who are linked to that bill through general principles of contract law or agency law may be bound"). Indeed, arbitration may be compelled "based upon the non-signatory's close relationship with a signatory." *Winco Window Co., Inc. v. G & S Glass & Supply, Inc.*, 2015 WL 3604072, at *4 (E.D. Mo. 2015) (citing *PRM Energy Sys., Inc. v. Primenergy, LLC*, 592 F.3d 830, 834 (8th Cir. 2010)). Nevada law confirms that under principles of contract and agency, an arbitration obligation executed by another party may attach to a nonsignatory. *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 124 Nev. 629, 634, 189 P.3d 656, 660 (2008); *see also* Bates v. Nevada Resort Properties Polo Towers Ltd. Partnership, 124 Nev. 1451, at n. 4, 238 P.3d 795 (Nev. 2008).

In addition, "an agent is not relieved from liability for fraudulent misrepresentations by the fact that he acted as agent and may have secured no personal advantage." Restatement (Second) of Agency § 348 (1958) (Reporter's Notes citing *Rawleigh, Moses & Co. v. Kornberg*, 210 F.2d 176 (8th Cir. 1954). "The liability of the agent is based upon the entire course of conduct, which includes the assumption of the duty to act and the subsequent failure to act; he is liable only if the harm would not have occurred had he not undertaken the work." Restatement (Second) of Agency § 354.[5]

---

[5] The Nevada Supreme Court has relied upon the Agency sections of the Restatement and American Jurisprudence in various opinions. Restatement: *see, e.g., Viega GmbH v. Eighth Jud. Dist. Ct.*, 328 P.3d 1152, 1158 (Nev. 2014); *Easton Bus. Opportunities, Inc. v. Town Exec. Suites–Eastern Marketplace, LLC*, 126 NAO 13, 230 P.3d 827, 834 (Nev. 2010); *White Cap Indus., Inc. v. Ruppert*, 119 Nev. 126, 67 P.3d 318 (2003); *Kaldi v. Farmers Ins. Exchange*, 117 Nev. 273, 279, 21 P.3d 16, 20 (2001). American Jurisprudence: *see, e.g., Schlotfeldt v. Charter Hosp. of Las Vegas*, 112 Nev. 42, 47, 910 P.2d 271, 274

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

Regardless of how Plaintiff attempts to explain away his behavior, his conduct related to his mother's Credit One account establishes that he acted in her place or on her behalf, in a transaction governed by her contract, and is bound as an agent, representative, or heir.  Indeed, Plaintiff, who pays for his mother's cell phone on a "family" plan, purported to be his mother, and acted on her behalf when he contacted Credit One and verified her account information. Credit One reasonably relied upon Plaintiff's representation that he was his mother, and further reasonably relied on the provisions of the Cardholder and Arbitration Agreement by associating Plaintiff's phone number with his mother's account based upon her prior express consent. Thus, the underlying facts giving rise to Plaintiff's claims are based upon the unauthorized or authorized communications or transactions involving his mother's account and collection matters related thereto.  *See* FAC at ¶¶ 24-30; Exhibit B.   Additionally, the Arbitration Provision applies not only to Cardholders, but also to claims made by anyone connected with the cardholders including agents, representatives, and heirs.  Again, as a Cardholder's son, Plaintiff is not only "connected" with the Cardholder, but also acted as her agent, representative and/or heir.  Accordingly, the Court should enter a stay, compel arbitration, and strike Plaintiff's class allegation.

### 2.      Plaintiff is Precluded Under Estoppel from Avoiding the Arbitration Provision

The doctrine of equitable estoppel, "'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer*, 436 F.3d at 1101 (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)).  Equitable estoppel is established when: "(1) the party to be estopped must be apprised of the true facts, (2) that party must intend that his conduct shall be acted upon or must so act that the party asserting estoppel has the right to believe it was so intended, (3) the party asserting estoppel must be ignorant of the true state of the facts, and (4) the party asserting estoppel must have detrimentally relied on the other party's conduct." *Las Vegas Convention*

(1996); *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 695, 857 P.2d 740, 745 (Nev. 1993); *Nevis v. Fidelity New York, F.A.*, 104 Nev. 576, 577, 763 P.2d 345, 346 (1988).

*and Visitors Authority v. Miller*, 124 Nev. 669, 698, 191 P.3d 1138, 1157 (2008); *see also Holland Livestock Ranch v. U.S.*, 655 F.2d 1002 (9th Cir. 1981).

It is evident that Plaintiff's claims against Credit One arise out of and are "closely related to the agreements that contain the arbitration agreement. As a result, [Plaintiff] is precluded under equitable estoppel from avoiding the agreement to arbitrate." *See Bates v. Nevada Resort Properties Polo Towers Ltd. Partnership*, 124 Nev. 1451, 238 P.3d 795 (Nev. 2008). The elements of equitable estoppel are facially clear: (1) Plaintiff knew he was not Credit One's Cardholder (FAC at ¶ 32); (2) Plaintiff provided his mother's cardholder verification information with the intention that Credit One would provide him with additional information (*id.* at ¶¶ 29-30); (3) Credit One was ignorant to the fact, and had no reason to know, that Plaintiff was misrepresenting himself as the account holder (*id.* at ¶ 28; Ex. A); and (4) Credit One relied upon Plaintiff's conduct in treating him as a cardholder, providing him with account information, and, eventually, calling his phone number consistent with the Cardholder and Arbitration Agreement (Ex. A; FAC at ¶ 22).

### 3. Plaintiff Should Not Benefit From His Fraudulent or Negligent Conduct Related to His Mother's Contractual Relationship with Credit One

"Estoppel may arise from the culpable negligence of one party by which another has been misled. If one who by his or her acts or representations through culpable negligence induces another to believe certain facts to exist and the latter, not knowing the facts, acts on such belief to his or her substantial prejudice, the former is, in equity, estopped from denying the existence of such fact." 28 AM.JUR. 2d *Estoppel and Waiver* § 62; *Knori v. State, ex rel., Dept. of Health, Office of Medicaid*, 109 P.3d 905 (Wyo. 2005). ("the doctrine of equitable estoppel, which has the effect of precluding an individual from asserting his rights against another person who relied, to his detriment, on the voluntary conduct of the former.") Moreover, estoppel can bind a non-signatory to an arbitration clause when that non-signatory has reaped the benefits of a contract containing an arbitration clause. *See Thomson–CSF, S.A. v. American Arbitration Assoc.*, 64 F.3d 773, 778 (2d Cir. 1995). This prevents a non-signatory

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

from "cherry-picking" the provisions of a contract that it will benefit from and ignoring other provisions that do not benefit it or that it would prefer not to be governed by (such as an arbitration clause). *See, e.g., American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999).

"While agency, as between the principal and agent, is a matter of their mutual consent, an agency by estoppel may be created insofar as third persons are concerned from acts and appearances which lead third persons to believe that it has been created." 3 AM.JUR. 2d *Agency* § 16; *see also* Restatement (Second) of Agency § 330 (1958) ("A person who tortiously misrepresents to another that he has authority to make a contract, conveyance, or representation on behalf of a principal whom he has no power to bind, is subject to liability to the other in an action of tort for loss caused by reliance upon such misrepresentation.") Here, Plaintiff verified his mother's account information, acting as his mother, using information available to him only because of his relationship with her.  His conduct undoubtedly led Credit One to believe that it was dealing with its Cardholder, or at the least, that Plaintiff had the authority to act on its Cardholder's behalf.  At a minimum, and regardless of his actual authority or ability to bind his mother, Plaintiff tortiously misrepresented himself to Credit One that he had authority to act on his mother's behalf, and is subject to the consequences of his misrepresentation.

Here, there can be no suggestion that Credit One would have made calls to Plaintiff's cell phone had it not relied upon his representations.  Indeed, had Plaintiff not intentionally interjected himself into the contractual arrangement between Credit One and its cardholder, Credit One would have never learned Plaintiff's number in the first place.  To allow Plaintiff the right to utilize his close relationship with his mother to engage in contractually governed conduct without also requiring him to arbitrate any claims pursuant to the Cardholder and Arbitration Agreement "would eviscerate the arbitration agreement." *See, e.g., CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798–799 (8th Cir. 2005).

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

14

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

**4.      By Embracing and Interjecting Himself Into a Contractual Arrangement, Plaintiff is Bound by the Arbitration Provision**

"[S]o long as there is some written agreement to arbitrate, a third party may be bound to submit to arbitration.  Ordinary principles of contract and agency law may be called upon to bind a non-signatory to an agreement whose terms have not clearly done so." *Bridas S.A.P.I.C. v. Government of Turkmenistan*, 345 F.3d 347, 355–56 (5th Cir. 2003) (internal citation omitted). Direct benefits estoppel is one theory by which non-signatories may be bound to arbitrate.  *See Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517 (5th Cir. 2006). The theory applies to "'non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.'" *Id*. at 517–18 (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)). A non-signatory can "embrace" a contract containing an arbitration clause by knowingly seeking and obtaining "direct benefits" derived from that contract. *See, e.g., Blaustein v. Huete*, 449 Fed. Appx. 347, 349 (5th Cir. 2011).

Plaintiff's claims are entirely derivative of his mother's contractual relationship with Credit One.  Just as a potential TCPA claim brought by a Cardholder would be subject to the Cardholder and Arbitration Agreement, so too are the statutory claims of a Cardholder's agent, representative, or heir.  *See, e.g., Graves v. BP America, Inc.*, 568 F. 3d 221 (5th Cir. 2009) (compelling arbitration in wrongful death case because cause of action was derivative of the signatory's rights and thus controlled by the agreement bearing the arbitration clause.)  Here, Credit One's account services are provided to its Cardholders under an arrangement controlled by contract.  Plaintiff knowingly sought and obtained the benefits of that contract and relationship by accessing his mother's account information. FAC at ¶ 29. Plaintiff "embraced" the contractual arrangement between his mother and Credit One by obtaining access to information that only a Cardholder would have received: access to a person's credit card account information. By accepting the benefits of a contract, Plaintiff also assumed its burdens. And Plaintiff's improper and unauthorized conduct related to his mother's account should

15

entitle him to no greater rights than those possessed by the signatories. Accordingly, the Court should stay the litigation, compel arbitration and strike the alleged class.

**IV.    Alternatively, the Court Should Disqualify Plaintiff as the Proposed Class Representative and Strike the Alleged Class[6]**

**A.    The Unique and Improper Conduct Giving Rise to Plaintiff's Claims Subject Him to Unique Defenses Which Will Become the Focus of the Litigation**

"[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) (denying certification because proposed class representative's "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class."). "To defeat class representation, any allegations concerning the representative's adequacy must be relevant to the claims in the litigation, such that the problems 'could become the focus of cross-examination and unique defenses at trial, to the detriment of the class.'" *German v. Fed. Home Loan Mortg. Corp.*, 168 F.R.D. 145 (S.D.N.Y. 1996) (citing *Darvin v. Int'l Harvester*, 610 F. Supp. 255, 257 (S.D.N.Y. 1985); *see also Labou v. Cellco P'ship*, 2014 WL 824225, at *4 (E.D. Cal. Mar. 3, 2014) (denying class certification where plaintiff sought to certify a TCPA class of customers and non-customers of Verizon when plaintiff fraudulently or negligently provided her phone number to Verizon.).    Thus, certification should be denied if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to [him]." *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).  "The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class

---

[6] Fed. R. Civ. P. 23 requires that a determination be made as to whether to certify a class action "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1). "Rule 23 does not preclude a defendant from bringing a 'preemptive' motion to deny certification." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009). Even where a defendant makes a preemptive motion to deny class certification, the burden remains on the plaintiff to demonstrate that each of Rule 23's requirements for class certification have been satisfied. *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92 (S.D.N.Y. 2010).

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

will suffer." *J.H. Cohn & Co. v. American Appraisal Assocs., Inc.*, 628 F.2d 994, 999 (7th Cir. 1980); *see also Pagan v. The New Wilson's Meats, Inc.*, 2011 WL 1876027, *7 (E.D. Pa. May 17, 2011) (finding that named plaintiff who was terminated from employment for allegedly stealing from store could not serve as class representative because plaintiff's actions could provide a defense not applicable to any other prospective class member).

Here, Plaintiff cannot represent the proposed class because (a) his TCPA claim arises from his own fraudulent conduct, and (b) his complete lack of credibility evidenced by the numerous inconsistent versions of events he has provided regarding the key facts of this case makes him an inadequate class representative. As to "similarly situated" putative class members who hacked into a cardholder's account, one wonders whether and how many such class members there really are, and whether they really want to subject themselves to possible criminal prosecution and civil counterclaims from Credit One.

## B.  Plaintiff's TCPA Claim Arises From His Own Fraudulent Actions

Based on the concern that class members will suffer if their representative is preoccupied with defenses unique to him, courts have refused to allow a named plaintiff to serve as a class representative where the named plaintiff has engaged in fraudulent or criminal conduct in relation to the facts giving rise to the claim. For example, in *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625 (W.D. Wash. 2011), the named plaintiff in a breach of insurance policy case allegedly made material misrepresentations when she applied for car insurance regarding who would drive her vehicle, and did not acknowledge that her fiancé was a regular driver of her vehicle until after an accident occurred in which her fiancé was driving. The court held that she could not serve as a class representative because litigation regarding that defense might preoccupy the named plaintiff to the detriment of the class claims irrespective of whether the defense was ultimately successful, and also threatened to undermine her credibility at trial. *Id.* at 632-33. Similarly, in *O'Neil v. Appel*, 165 F.R.D. 479 (W.D. Mich. 1996), where a proposed representative in a securities fraud action had purchased shares relying on insider

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

17

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

information, he was subject to the unique defense that he had engaged in insider trading in purchasing the shares at issue, and could not serve as a class representative. *Id.* at 492-93.

Here, Plaintiff's TCPA claim arises directly from his actions in calling Credit One, reaching its IVR system. Specifically, and by his own admission, he misrepresented himself as his mother, a Credit One Cardholder, by entering her card number when instructed to input "*your* sixteen digit card number" and inputting the last four digits of his mother's Social Security Number when instructed to input the "last four digits of *your* Social Security Number", and thereby fraudulently obtaining information about his mother's financial account with Credit one, without her permission or authorization, by misrepresenting himself as his mother. FAC at ¶¶ 27, 29; Exhibit A. Indeed, Plaintiff specifically contends that his mother "provided Plaintiff with no instruction or consent to contact any third parties regarding her financial obligations." FAC at ¶ 29. Because this information is protected by dual authentication and offered only to Cardholders, Credit One reasonably believed Plaintiff was his mother. This conduct is both a violation of the Computer Fraud and Abuse Act ("CFAA") and constitutes common law fraud.

The CFAA is violated when, *inter alia*, a person "intentionally accesses a computer[7] without authorization or exceeds authorized access, and thereby obtains . . . information contained in a financial record of a financial institution, or of a card issuer . . . or information from any protected computer."[8] 18 U.S.C. § 1030(2)(A), (C). Through his intentional contact

---

[7] A "computer" is defined quite broadly, as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device". 18 U.S.C. § 1030(e)(1). Credit One's IVR system easily satisfies that definition.

[8] A "protected computer" is defined as a computer "(A) exclusively for the use of a financial institution or the United States Government, or, in the case of a computer not exclusively for such use, used by or for a financial institution or the United States Government and the conduct constituting the offense affects that use by or for the financial institution or the Government; or (B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States". 18 U.S.C. § 1030(e)(2). As Credit One's IVR system is both for the use of a financial institution (Credit One), and is used in interstate commerce by cardholders across the country obtaining their credit card information, Credit One's IVR system satisfies both of the alternative definitions of a protected computer.

with Credit One's IVR system, and by misrepresenting himself as a Credit One Cardholder, apparently without his mother's authorization, Plaintiff illegally accessed "information contained in a financial record of a financial institution, or of a card issuer . . . or information from any protected computer", in violation of the CFAA.  Thus, Plaintiff's own conduct would require any similarly situated putative class member to be equally guilty of violating federal law that led directly to their alleged claims, and, oddly, would require any class member to incriminate himself/herself by making a claim in this proceeding.

In addition to violating the CFAA, Plaintiff's conduct constitutes civil fraud as well.  *See Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998) (listing elements of fraudulent misrepresentation as "(1) A false representation made by the defendant; (2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation.").  Plaintiff falsely represented his identity by calling Credit One on January 18, 2014 and authenticating his mother's account by entering her sixteen digit credit card account number and last four digits of her Social Security Number.  Plaintiff knew he was misrepresenting his identity to Credit One because the IVR system directed Plaintiff to input "*your* sixteen digit card number" and "the last four digits of *your* Social Security Number", yet Plaintiff input his mother's card number and the last four digits of his mother's Social Security Number.  Exhibit H.  Credit One relied upon Plaintiff's false representations and treated Plaintiff as a Cardholder, providing him with access to Ms. Bridge's account information.  Furthermore, and consistent with the Cardholder and Arbitration Agreement and Plaintiff's representations, Credit One associated Plaintiff's phone number with his mother's account, which gave rise to Plaintiff's TCPA claim.

At his deposition, Plaintiff readily acknowledged the unique circumstances that gave rise to his case:

> Q. Have you made any other calls to her creditors without her knowledge?
>
> A. No.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

19

. . .

Q. So you never called her creditors without her knowledge prior to surgery?

A. Correct.

Q. And you haven't done that since then?
A. Correct.

Q. Have you ever called someone else's creditors without their knowledge?
A. No.

Q. Has anyone ever informed you that they contacted your creditors after contacting them –
A. No.

Q. -- without requesting your consent first?
A. No.

Q. So this was because of the surgery and the unique situation that that created; is that correct?
A. That's correct.

Q. This was an unusual circumstance –
A. Very.

Exhibit C at 127:4-128:3.  These highly unique circumstances giving rise to Plaintiff's claim demonstrate that Plaintiff cannot serve as a class representative because he is subject to the unique defense that the conduct giving rise to his claim both violated the CFAA and constitutes civil fraud, which is likely to become the focus of the litigation.

As stated by the Ninth Circuit, "[t]he principal of public policy is this:  Ex dolo malo non oritur actio.  No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.  The cases upholding this doctrine are numerous and emphatic.  Indeed, there is really no dispute concerning it."  *Hill Cty. v. Shaw & Borden Co.*, 225 F. 475 (9th Cir. 1915).  Here, that is exactly what Plaintiff asks this Court to do, as his TCPA claim is founded on his illegal actions in violating the CFAA and making fraudulent representations to Credit One.  Plaintiff's illegal and improper conduct has given rise to his claim, and the defenses Credit One will assert based on that illegal and improper conduct, will become a primary focus of this litigation.  Indeed, Plaintiff's conduct gives rise to counterclaims and

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

third-party claims which make adjudication on a class basis entirely impractical. Accordingly, Plaintiff cannot serve as a class representative and a class cannot be certified.

## C. Plaintiff Cannot Serve as a Class Representative Due to His Complete Lack of Credibility Regarding Key Issues in This Case

"A plaintiff subject to unique defense, especially as to his credibility … is an inadequate class representative." *Kassover v. Computer Depot, Inc.*, 691 F. Supp. 1205, 1213-14 (D. Minn. 1987) (finding named plaintiff was inadequate class representative where plaintiff admitted in deposition that he possessed no facts to support essential allegations in complaint).[9]

As set forth above, Plaintiff has drastically changed his story about the central facts giving rise to his TCPA claim.  Specifically, Plaintiff originally claimed that his son, who has a similar name but a different residential address and phone numbers, has or had an account with Credit One, and that Credit One obtained his phone number through skip tracing.  Compl. at ¶ 26.  Indeed, Plaintiff alleged that at "no time did [he] ever provide his cellular telephone number

---

[9] *See also Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998) (upholding a determination of inadequacy based on the finding that the plaintiff's "differing accounts about the letters that form the very basis for his lawsuit surely would create serious concerns as to his credibility at any trial"); *Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983) (district court reasonable in denying representative status where plaintiff was vulnerable to serious attacks on credibility based on testimony that he had relied on a report in purchasing stock shares, when the report actually did not yet exist at the time plaintiff claimed he relied on it); *Ryan v. Jersey Mike's Franchise Sys.*, 2014 WL 1292930, *5-8 (S.D. Cal. Mar. 28, 2014) (denying class certification in TCPA case where Plaintiff gave conflicting accounts of critical facts such as whether he provided defendant with his phone number, which raised "serious concerns about his credibility"); *Jovel v. Boiron, Inc.*, 2014 WL 1027874, *2, 4-5 (C.D. Cal. Feb. 27, 2014) (denying class certification where complaint in misleading labeling case alleged plaintiff relied on label information in making purchase, but in deposition plaintiff testified that he did not read the label until after purchasing the product, as this contradictory testimony on a critical issue could jeopardize interests of the other class members); *Smyth v. Carter*, 168 F.R.D. 28 (W.D. Va. 1996) (finding named plaintiffs could not adequately represent class of recipients of federal social welfare benefits where representatives understated monthly expenditures on welfare application, used a false name to obtain an apartment, misrepresented living arrangement and paternity of child, and evasively answered deposition questions, and stating "if named plaintiffs are evasive, untruthful, or lack credibility, this weighs heavily against them as adequate class representatives."); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 509–10 (N.D. Ill. 1990) (granting motion to decertify class where lead plaintiff gave false testimony in a "deliberate attempt to conceal information" and where lead counsel was complicit in the false testimony); *Darvin v. Int'l Harvester Co.*, 610 F. Supp. 255, 256-57 (D.C.N.Y. 1985) (named plaintiff was inadequate class representative due to lack of credibility where allegations in complaint regarding when he learned of certain information regarding financial condition of company were contradicted by plaintiff's statements during deposition); *Cohen v. Laiti*, 98 F.R.D. 581, 582–83 (S.D.N.Y. 1983) (finding plaintiff to be an inadequate class representative where there were multiple contradictions between plaintiff's testimony and the allegations in the complaint).

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

21

to Credit One.  *Id.* at ¶ 27.  After Plaintiff learned that Credit One does not skip trace, however, Plaintiff changed his story and *now* alleges that *he did in fact* call Credit One on or about January 18, 2014 with his cell phone to determine his mother's current indebtedness. FAC at ¶ 30.  The Amended Complaint removes his prior allegations regarding his son, which he has now testified are totally unsupported. In his recent deposition Plaintiff conceded that **he was unaware whether his son even has a Credit One account, and that he has never asked his son whether he has an account with Credit One**.  Exhibit C at 65:17-20.  Thus, not only has Plaintiff abandoned his allegations regarding his son and skip tracing, he has acknowledged that he had called Credit One previously.  Plaintiff has completely changed his story regarding the central facts of his case and effectively concedes that no investigation to support his original factual allegations was performed prior to filing the Complaint.  Instead, Plaintiff is willing to "adapt" his story to sustain his claim regardless of the <u>actual</u> facts.

Plaintiff's inconsistencies do not end there.  Plaintiff originally claimed that Credit One began placing calls to his cellular phone in October 2013.  Compl. at ¶ 21.  Similarly, Plaintiff's Interrogatory responses in February 2015 maintain that Plaintiff received "dozens" of harassing phone calls from Credit One in or around September-October 2013.  *See* Exhibit D at Response to Interrogatory No. 14.  Further, in the original Complaint Plaintiff alleged that during one such call received in the fall of 2013, he instructed a Credit One representative to stop calling him on his cellular phone.  Compl. at ¶ 24.  However, Plaintiff now admits that he does not know whether he received *any* phone calls from Credit One prior to January 2014, and that while he had a call with someone during the fall of 2013 in which he told them to stop calling, the person on the phone never identified themselves as a Credit One representative, so (assuming such a call occurred) Plaintiff does not even know if that call was from Credit One.  Exhibit C at 58:18-60:25, 105:3-8.  Indeed, Plaintiff now alleges that Credit One did not even obtain his phone number until January 2014.  FAC ¶ 30.  These stories simply cannot be reconciled.

Plaintiff also alleges that he contacted several of his mother's creditors with his cell phone, including Credit One.  *Id.*  He now acknowledges that he was aware of his mother's

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

relationship with Credit One at least as of the date of his January 18, 2014 call.  *Id.*  This version of events, however, contradicts Plaintiff's original Complaint and verified Interrogatory responses.  Indeed, in his original Complaint (filed Sept. 17, 2014), Plaintiff alleged he had never contacted Credit One. Compl. at ¶ 27.  In his Interrogatory responses (served Feb. 20, 2015) inquiring into his or his family's business dealings with Credit One he stated "[b]ased on documents provided by Defendant in this litigation, Plaintiff's mother, Nancy A. Bridge, may have had business dealings with Defendant.  Plaintiff has not independently verified whether his mother has, in fact, had business dealings with Defendant."  Exhibit D (Resp. No. 5).  In his Amended Complaint (served June 25, 2015), Plaintiff suddenly recalls contacting his mother's creditors, including Credit one, on January 18, 2014, and that he accessed her account information to obtain her account balance (i.e., he knew she had business dealings with Credit One). FAC ¶ 29-30.  Either the Interrogatory response or the Amended Complaint is false. And Plaintiff's insistence that his recollection of events is more accurate in his Amended Complaint, filed nine months after his original Complaint is unavailing.

Further, despite the allegations in the Amended Complaint in which Plaintiff admits calling Credit One and obtaining information regarding his mother's account, Plaintiff has also stated under oath that prior to this litigation he was unaware that his mother even had an account with Credit One.  *See* Exhibit C at 97:14-98:6.  Yet, Plaintiff's subsequent testimony directly contradicted himself.  *Id.* at 123:14-24 ("Q. So did you first learn about her business relationship with Credit One on January 18th, which is the day you represented you called? A. Well, I saw the bill probably a day or two before that. Q. Okay.· So between the 15th and the 18th? A. Yes. Q. . . Do you recall contacting Credit One? A. Yes.")  Clearly, Plaintiff's multiple, conflicting recitations of events cannot each be true.

As yet another example of the contradictory statements Plaintiff has made, Plaintiff originally alleged that Credit One's calls to his cellular telephone were "debt collection calls and/or telemarking calls through which Credit One promoted its credit card product or service offers to Plaintiff".  Compl. at ¶¶ 27, 35.  However, in his deposition Plaintiff testified that he

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

1  never received any telemarking calls from Credit One or calls to promote Credit One's products

2  or services.  Exhibit C at 62:21-63:5, 100:10-23.

3        The foregoing examples of false and inconsistent statements made by Plaintiff both in

4  the different versions of his Complaint, in his Interrogatory responses, and under oath during his

5  deposition demonstrate that Plaintiff has a complete lack of credibility.  These are not minor

6  inconsistencies or misstatements of minor consequence, but rather, form the core factual basis

7  for Plaintiff's TCPA claim.  Where a proposed class representative admits that he filed a

8  Complaint with no facts to support its essential allegations, or testifies during his deposition in

9  direct contradiction of the allegations in his Complaint, he cannot serve as a class

10  representative.  *See e.g., Kassover*, 691 F. Supp.2d at 1213-14; *Jovel*, 2014 WL 1027874 at *2,

11  4-5; *Darvin*, 610 F. Supp. at 256-57; *Cohen*, 98 F.R.D. at 582-83.  Plaintiff's original

12  Complaint, Amended Complaint, Interrogatory Responses, and deposition testimony contain so

13  many factual contradictions about matters that are central to this case (*when* Credit One began

14  calling Plaintiff, *how* Credit One obtained Plaintiff's cell phone number in the first place, how

15  many times Credit One called Plaintiff, whether Credit One made dozens of "harassing" phone

16  calls to Plaintiff or none at all during the Fall 2013 timeframe, whether and when he instructed a

17  Credit One representative to have Credit One stop calling him, whether and when he became

18  aware that his mother had an account with Credit One, whether Credit One made any

19  telemarking calls or calls to promote its credit card product or service offers to Plaintiff, etc.),

20  that attacks on Plaintiff's lack of credibility and his shifting versions of events will unavoidably

21  become one of the major focuses of this case, to the detriment of any purported class as a whole.

22  Accordingly, Credit One respectfully requests that Plaintiff be disqualified from serving as a

23  class representative and the class allegations be stricken.

24  **V.**    **Plaintiff's Consumer Fraud/ Nevada Deceptive Trade Practices Act Claim Must Be Dismissed**

25      **A.**    **Legal Standard**

26        A court may dismiss a pleading for "failure to state a claim upon which relief can be

27  granted." Fed. R. Civ. P. 12(b)(6).  In *Ashcroft v. Iqbal* the Supreme Court clarified the two-step

28

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

approach district courts are to apply when considering motions to dismiss. 556 U.S. 662 (2009). First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 679.  Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.   Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the alleged misconduct."  *Id.* at 678.  Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief."  *Id.* at 679 (internal quotation marks omitted).  When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[10]

### B.    Plaintiff's Deceptive Trade Practices Act Claim Must Be Dismissed Because Credit One's Alleged Wrongful Conduct  Does Not Involve the Sale of Goods or Services

By his third claim for relief, Plaintiff alleges that Credit One's actions violated the Nevada Deceptive Trade Practices Act ("NDTPA").  "A person engages in a 'deceptive trade practice' when in the course of his business or occupation he knowingly ... [v]iolates a state or federal statute or regulation relating to the sale or lease of goods or services," or "uses coercion, duress or intimidation in a transaction." Thus, to state a claim under the NDTPA, a plaintiff must show that "(1) an act of consumer fraud by the defendant (2) caused (3) damages to the plaintiff."  *See, e.g. Peatrowsky v. Persolve*, 2:12–cv–00935–JAD–VCF, 2014 WL 1215061, at *5 (D. Nev. Mar. 24, 2014).  Plaintiff can establish none of these elements and his NDTPA claim must be dismissed.

---

[10] A party can also "plead himself out of a claim" by including factual allegations contrary to the factual elements of his claims or contradicted by documents referred to in the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Soo Line R.R. v. St. Louis Southwestern Ry., Co.*, 125 F.3d 481, 483 (7th Cir. 1997) ("[a] plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts.")

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

1   NRS 598.0923(3) only applies to a "state or federal statute or regulation relating to ***the***

2   ***sale or lease of goods or services***." NRS 598.0923(3) (emphasis added).  Numerous courts in

3   Nevada have confirmed that "NRS § 598 only applies to persons engaging in the sale of goods

4   or services." *See Baeza v. Bank of Am. N.A.*, No. 3:11–cv–767–RCJ–VPC, 2012 WL 4062809

5   at *4 (D. Nev. Sept. 14, 2012) (citing *Reyes v. BAC Home Loans Servicing*, 2012 WL 2367803,

6   at *2 (D. Nev. 2012)).[11]  Here, Plaintiff's Complaint does not allege that Credit One was

7   engaged in the sale of good or services—only that Credit One made calls for debt collection

8   purposes.  FAC ¶¶ 25, 39, 42.  Indeed, Plaintiff's NDTPA claim provides no factual allegations

9   beyond a recitation of elements and legal conclusions which are not entitled to the presumption

10   of truth.  *See Iqbal*, at 679.  Similarly, Plaintiffs' general allegations do not support an inference

11   that Credit One violated the NDTPA or that its alleged contact with Plaintiff was related to the

12   sale of goods or services.

13   Nevada's Attorney General, who is charged with enforcement of NRS Chapter 598 (*see,*

14   *e.g.,* NRS 598.096-598.0963) has confirmed that "debt collection" is specifically <u>not</u> deceptive

15   trade under NRS Chapter 598.  A true and correct copy of the Attorney General's "Bureau of

16   Consumer Protection" webpage is attached hereto as **Exhibit I** ("Examples of what is not

17   deceptive trade include timeshares, landlord/tenant issues, debt collection, and bank or credit

18   card problems.").[12]  Moreover, NRS 80.015 explicitly states that "securing or collecting debts . .

19

---

20   [11] *See also Archer v. Bank of Am. Corp.*, 2:11–cv–1264, 2011 WL 6752562, *2 (D. Nev. Dec. 23, 2011); *Lee v. BAC Home Loans Servicing, LP*, 2:11–cv–1583, 2011 WL 5827202, *3 (D. Nev. Nov. 18, 2011);

21   *Lalwani v. Wells Fargo Bank*, 2:11–cv–0084, 2011 WL 4574338, *2 (D. Nev. Sept. 30, 2011).

22   [12] The Attorney General's Website instructs as follows:

23   When a consumer is buying a good or service, the seller cannot deceive the consumer about the good or service, as defined under the Nevada Deceptive Trade

24   Practices Act (NRS 598) and its related laws. ***A deceptive trade practice includes a seller making a false statement or misrepresentation about its goods or services,

25   or failing to disclose material facts about its goods or services***. Not all fraudulent activity is illegal under the Nevada Deceptive Trade Practices Act, such as when another law applies that regulates a particular industry or is more specific.

26   Examples of ***what is not deceptive trade include*** timeshares, landlord/tenant issues, ***debt collection***, and bank or credit card problems. (Emphasis added).

27   Also available at:  http://ag.nv.gov/About/Consumer_Protection/Bureau_of_Consumer_Protection/ (last visited August 4, 2015).

28

.” does not constitute doing business in the State of Nevada. NRS 80.015(1)(h). Because "securing or collecting debts" does not constitute doing business in Nevada, Credit One's actions were not "in the course of ... business" as required by the NDTPA. *See Peatrowski*, 2014 WL 1215061, at *5.

Several recent District of Nevada cases confirm that alleged violations of the TCPA are insufficient to trigger a NDTPA claim because the alleged violations were not related to the sale or lease of goods and/or services. *See, e.g., Peatrowsky*, 2014 WL 1215061, at *5; *see also Kervin v. GC Services, Ltd. Partnership*, 2:13–cv–01461–MMD–PAL, 2014 WL 584966, at *2 (D. Nev. Feb. 12, 2014) (dismissing Plaintiff's NDTPA claims because Chapter 598 only applies to transactions involving goods and services, not debt collection activities.) As Judge Dorsey stated, Plaintiff's "NDTPA claim is an attempt to shove [his] square facts into this round hole of Nevada law." *See Peatrowsky*, 2014 WL 1215061, at *5. Like the *Peatrowsky* case, Plaintiff's alleged TCPA violations simply *are not related to the sale or lease of goods or services*. So even if Plaintiff has alleged a viable TCPA claim against Credit One, the alleged violations would not give rise to a claim under NRS 598.0923(3). Plaintiff does not explain what alleged action by Credit One relate to "the sale or lease of goods or services" as required for NRS 598.0923(3) to apply. Indeed, none of the allegations in the Amended Complaint even suggests Credit One sold or leased goods or services to Plaintiff. Accordingly, because NRS 598.0923(3) does not apply to debt collection calls, Plaintiff's claim for NDTPA fails as a matter of law and must be dismissed.

**C.     Plaintiff's Consumer Fraud/NDTPA Claim is Not Pleaded With Particularity**

In addition, a private right of action for a violation of the NDTPA may be brought only under NRS 41.600, which states that "[a]n action may be brought by any person who is a victim of consumer fraud" and encompasses a "deceptive trade practice" as defined in NRS 598.0915 to NRS 598.0925. *See* NRS 41.600(2)(e). Thus, when a "plaintiff is filing for misconduct under Nevada's Unfair and Deceptive Trade Practices Act (NDTPA), the claim must be pled with particularity under Federal Rule of Civil Procedure 9(b)." *Horner v. Mortgage Electronic*

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV  89134

27

1    *Registration Systems, Inc.*, Case No. 2:12–CV–269 JCM-GWF, 2012 WL 2017589, at *2 (D.

2    Nev. June 5, 2012) (citing *Thorne v. Wagner*, Case No. 2:06–cv–492, 2007 WL 496373, at *3

3    (D. Nev. Feb. 13, 2007); *see also Kervin*, 2014 WL 584966, at 2.   "In order to have a

4    sufficiently particular pleading, the complaint must include 'averments of the time, the place,

5    the identity of the parties involved, and the nature of the fraud.'" *Horner*, 2012 WL 2017589, at

6    *2 (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). Indeed,

7    under Nevada law, "[c]laims for fraud, ***consumer fraud***, constructive fraud, and civil

8    conspiracy must satisfy NRCP 9(b)'s heightened pleading standards." *Davenport v.*

9    *Homecomings Financial, LLC*, 2014 WL 1318964, *2 (Nev. Mar. 31, 2014) (emphasis added).

10             Here, Plaintiff's Amended Complaint fails to "state the time, place, and specific content

11   of the false representations" or otherwise plead its consumer fraud/NDTPA claim with

12   particularity under Rule 9(b) the and therefore must be dismissed.   *See, e.g., Sanford v.*

13   *MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010); *Horner*,  2012 WL 2017589, at *2.

14   Indeed, no allegations of any false representations are made, nor can they be considering that

15   the alleged wrongdoing does not involve fraudulent representations,[13] and the Amended

16   Complaint in no way supports a claim for consumer fraud/NDTPA.   Instead, the allegations set

17   forth in Paragraphs 68-75 merely recite legal elements and make hollow legal conclusions

18   regarding an NDTPA claim under NRS 598.0923(3).   Plaintiff has failed to even allege facts in

19   support of any of the elements of a violation of NRS 598.0923(3), let alone sufficiently pleaded

20   facts to support the cause of action.   As such, Plaintiff's allegations are not entitled to any

21   assumption of truth and are insufficient to support his NDTPA claim.   Therefore, Plaintiff's

22   NDTPA claim fails because it is not pleaded with particularity and must be dismissed.

23   / / /

24   / / /

25   / / /

26

27   _____
     [13] Plaintiff alleges only that Credit One made calls to his cellular telephone without consent. Plaintiff

28   does **not** allege that Credit One made any fraudulent or other statements to him during those calls.

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

# VI.    CONCLUSION

Based on the foregoing, Credit One respectfully requests the Court stay this action, compel arbitration, and strike the alleged class.  Alternatively, Credit One requests the Court disqualify Plaintiff as a proposed class representative and dismiss Plaintiff's claim for Consumer Fraud/ Nevada Deceptive Trade Practices Act.

DATED this 7th day of August, 2015.

*/s/ Brian G. Anderson*

Patrick J. Reilly
Brian G. Anderson
R. Calder Huntington
HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134
*Attorneys for Defendant Credit One Bank, N.A.*

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

29

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 7th day of August, 2015, I served a true and correct copy of the foregoing **MOTION TO STAY, COMPEL ARBITRATION AND STRIKE CLASS CLAIMS, OR IN THE ALTERNATIVE, MOTION TO DISQUALIFY PLAINTIFF AS PROPOSED CLASS REPRESENTATIVE, STRIKE CLASS CLAIMS AND DISMISS CONSUMER FRAUD/ DECEPTIVE TRADE PRACTICES CLAIM** by electronic transmission to the parties on electronic file and/or depositing same in the United States mail, first class postage fully prepaid to the persons and addresses listed below :

Leonard H. Stone, Esq.
Shook & Stone, CHTD.
710 S. Fourth Street
Las Vegas, Nevada 89101
lstone@shooandstone.com

Adam J. Levitt, Esq.
Kyle J. McGee, Esq.
Diane T. Zilka, Esq.
Grant & Eisenhofer, P.A.
30 North LaSalle Street, Ste. 1200
Chicago, Illinois 60602
alevitt@gelaw.com
kmcgee@gelaw.com
dzilka@gelaw.com
*Admitted Pro Hac Vice*

Stephen F. Taylor, Esq.*
Lemberg Law, LLC
1100 Summer Street, 3rd Floor
Stamford, Connecticut 06905
staylor@lemberglaw.com
*Admitted Pro Hac Vice*

*Attorneys for Plaintiff and the Proposed Class*

/s/ Alexis Stajkowski
_____
An Employee of Holland & Hart LLP

HOLLAND & HART LLP
9555 Hillwood Drive, 2nd Floor
Las Vegas, NV 89134

30