UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| WILLIAM BRIDGE, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CREDIT ONE FINANCIAL, a Nevada corporation, d/b/a CREDIT ONE BANK, N.A.,<br><br>        Defendant. | 2:14-cv-1512-LDG-NJK<br><br>ORDER |

   Defendant Credit One Bank, N.A. ("Credit One") has filed a second motion to stay (#109), compel arbitration (#110), and strike class claims (#111), or in the alternative, motion to disqualify plaintiff Bridge as proposed class representative (#112), and dismiss consumer fraud/deceptive trade practices claim (#113, opposition #116, reply #128). The court will address the motion to compel arbitration as an initial matter, as that outcome may be determinative, at least for the time being, of the other motions.

   In this case, plaintiff Bridge generally alleges that Credit One deployed restricted auto-dialing technologies to improperly conduct debt collection beyond the customers who had consented to receive such calls. This, alleges Bridge's amended class action complaint, negligently and knowingly violated the Telephone Consumer Protection Act, and Nevada's Deceptive Trade Practices Act.

Bridge's mother was a Credit One account holder. In January 2014, she underwent surgery and Bridge learned that her prognosis was not favorable. In addition to the emotional impact of his mother's condition on Bridge, he was also concerned that he had no understanding of his mother's finances in the event that she passed away. On January 18, 2014, after several days in which he stayed in his mother's house while she was in the hospital, Bridge called Credit One's toll-free automated account information system using his own cell phone and without his mother's knowledge. Credit One's system allows callers to interact with its technology via a telephone keypad. Upon reaching Credit One's automated account information system, a customer hears the following automated message: "Welcome to Credit One Bank. Your account now includes an automated 1% reward on gas purchases. Press 1 for English. . . . Please enter your sixteen digit card number." When asked to do so, Bridge entered his mother's account number that he found on her billing statement. After entering an account number, Credit one's system instructs the following: "Please enter the last four digits of your social security number." Bridge entered the last four digits of his mother's social security number, and was instructed to stay on the line while Credit One accessed his mother's account information. After entering the correct validation information, Bridge was able to access information related to the account, including the account balance, delinquency status, and payment due dates.

Upon successful authentication of the account and social security information, the phone number Bridge was using became associated with Bridge's mother's account. Bridge's mother's account became delinquent, and calls were made to recover the debt. Bridge alleges that over 100 such calls were made to his cell phone number between January 2014 and March 2014. On or about March 18, 2014, Bridge instructed a Credit One representative to stop calling his cell phone, and no subsequent calls were made.

Credit One's standard Visa/MasterCard Cardholder Agreement, Disclosure Statement and Arbitration Agreement ("cardholder agreement") provides the following:

>COMMUNICATIONS: You are providing express written permission authorizing Credit One Bank or its agents to contact you at any phone number (including mobile, cellular/wireless, or similar devices) or email address you provide at anytime, for any lawful purpose. . . . Phone numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means.

Credit One's cardholder agreement also contains the following arbitration provision:

>Claims subject to arbitration include not only Claims made directly by you, but also Claims made by anyone connected with you or claiming through you, such as a co-applicant or authorized user of your account, your agent, representative or heirs, or a trustee in bankruptcy.

The cardholder agreement's arbitration provision further states:

>Claims subject to arbitration include, but are not limited to, disputes relating to the establishment, terms, treatment, operation, handling, limitations on or termination of your account; any disclosures or other documents or communications relating to your account; any transactions or attempted transactions involving your account, whether authorized or not: billing, billing errors, credit reporting, the posting of transactions, payment or credits, or collections matters relating to your account.

In its motion to compel arbitration, Credit One asserts that Bridge should be bound by the cardholder agreement including the arbitration provision even though he is a non-signatory to the agreement. Credit One argues that non-signatories may be bound by arbitration agreements under ordinary contract and agency principles, and that non-signatories may assume the obligations contained in an arbitration clause where there is a sufficiently close relationship to justify it. Bridge argues that the cardholder agreement does not apply to him under any legal theory.

In determining whether parties have agreed to arbitrate a dispute, the court applies general state-law principles of contract interpretation, while giving due regard to the federal policy in

3

favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration. Mundi v. Union Security Life Ins. Co., 555 F.3d 1042, 1044 (9th Cir. 2009) (citations omitted). The presumption in favor of arbitration, however, does not apply if contractual language is plain that arbitration of a particular controversy is not within the scope of the arbitration provision. Id. (citations omitted).

Generally, nonsignatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles. Comer v. Micor, Inc., 436 F.3d 1098, 1101 (9th Cir. 2006). Federal courts have identified five theories pursuant to which an arbitration clause can be enforced by or against a nonsignatory: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil piercing alter ego, and (5) estoppel. Id.

The court focuses on whether Bridge can be subject to the arbitration provisions of the cardholder agreement between his mother and Credit One based on equitable estoppel. In Nevada,

> Under a theory of estoppel, "[a] nonsignatory is estopped from refusing to comply with an arbitration clause 'when it receives a "direct benefit" from a contract containing an arbitration clause.'"

Truck Insurance Exchange v. Swanson, 189 P.3d 656, 661 (Nev. 2008).

In analyzing whether a nonsignatory to a written agreement containing an arbitration clause may be compelled by a signatory to the agreement to arbitrate, the Mundi court relied favorably on Brantley v. Republic Mortgage Ins. Co., 424 F.3d 392 (th Cir. 2005). The Brantley court held that "just as estoppel can apply against a signatory to an arbitration clause who sues a nonsignatory thereto, it can also apply against a nonsignatory who sues a signatory. Id. at 628. In both instances, the test is that a nonsignatory should be bound by an arbitration clause when its claims against the signatory "arise[] from" the contract containing the arbitration clause. Id. (citation omitted). The court must look to the complaint to determine whether the claims of a signatory arise from the agreement in this case. The court finds that they do.

Bridge's amended complaint alleges that Credit One's telephone system was wrongfully used to contact Bridge at his cell phone number. It is the cardholder agreement that gives Credit One the authority "to contact you at any phone number (including mobile, cellular/wireless, or similar devices) . . . you provide at anytime, for any lawful purpose. . . . Phone numbers and email addresses you provide include those you give to us, those from which you contact us or which we obtain through other means." Bridge alleges that he did not give written consent to Credit One to call his cellular phone. However, he benefitted from the agreement by calling Credit One, inputting his mother's validation information, and gaining access to his mother's financial information. Bridge alleges that Credit One obtained his cell number through its use of automatic number identification technology. He further alleges: "This technology permits an inbound call center receiving calls from consumers, or companies utilizing [interactive voice response] technology, to obtain the number from which a call is received, and update its records to add that number to a particular account." The application of the technology upon which Bridge bases his claims derives from cardmember agreements between customers and Credit One, which agreements also contain the arbitration clause. In sum, Bridge is alleging that Credit One breached its duties under the cardmember agreements and as a result violated the Telephone Consumer Protection Act. In this situation, the court finds that Bridge's allegations arise from and relate directly to the duties imposed on Credit One under its cardholder agreement with his mother, and therefore, that arbitration should be compelled even though Bridge was not a signatory to the agreement. See <u>American Bankers Ins. Co. v. Long</u>, 453 F.3d 623, 627-28 (4th Cir. 2006) ("[E]stoppel is appropriate if in substance [the signatory's underlying] complaint [is] based on the [nonsignatory's] alleged breach of the obligations and duties assigned to it in the agreement." Therefore, to determine whether the claims are intertwined, the Court must look to the duties breached . . . as alleged in the Complaint"). Accordingly,

1    THE COURT HEREBY ORDERS that Credit One's motion to compel arbitration (#110)
2 is GRANTED.
3    THE COURT FURTHER ORDERS that Credit One's motion to stay (#109) is
4 GRANTED.  This action is hereby STAYED pending the outcome of arbitration.
5    THE COURT FURTHER ORDERS that, given the court's ruling on the motion to compel
6 arbitration (#110), Credit One's motions to strike class claims (#111), to disqualify (#112), and to
7 dismiss (#113) are DENIED without prejudice.

DATED this 31 day of March, 2016.

_____
Lloyd D. George
United States District Judge